**Dimitrious J. LIGNOS and Evelyn Lignos, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 318, Docket 35070.**

United States Court of Appeals, Second Circuit.

Argued Feb. 18, 1971.

Decided March 26, 1971.

John F. Papsidero, Buffalo, N. Y., for plaintiffs-appellants.

Virginia M. Hopkinson, Atty., Tax Division, Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Carolyn R. Just, Attys., Tax Division, Dept. of Justice; W. Kenneth Schroeder, Jr., U. S. Atty., W. D. N. Y., on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

In this case taxpayers are seeking to apply in reverse Mr. Justice Holmes's famous advice that men dealing with the Government must turn square corners.[1] Plaintiffs Dimitrious J. and Evelyn Lignos appeal from an order of the United States District Court for the Western District of New York, John O. Henderson, *Chief Judge,* which granted summary judgment to the United States in plaintiffs' suit for a tax refund. The basis of the judgment was that plaintiffs were equitably estopped from bringing their claim. For reasons set forth below, we believe that there are genuine issues as to material facts so that summary judgment was improper. Accordingly, we reverse and remand for further proceedings.

. In their action, taxpayers seek refund of $22,583.71, representing civil fraud penalties assessed by the Commissioner of Internal Revenue for the calendar years 1962 and 1963. The Government urged in its amended answer that plaintiffs are equitably estopped from claiming the refund. The circumstances leading up to this defense are as follows. In 1965, plaintiffs received a notice of tax deficiency determination made by the Commissioner for the taxable year 1961. The deficiency was for taxes in the amount of $12,228.74, together with a civil fraud penalty of $6,864.37, for a total of $19,093.11. After the taxpayers petitioned the Tax Court for a redetermination of the deficiency for 1961, the Commissioner sent out 30-day letters asserting that substantial sums were also due for succeeding years: for 1962, a deficiency in taxes of $11,622.77, with a civil fraud penalty of $5,889.09; and for 1963, a deficiency in taxes of $41,382.66, with a civil fraud penalty of $21,441.33. Thereafter, discussions followed with Internal Revenue Service personnel covering all three years.

As a result of these negotiations, the parties agreed that the sums due from the taxpayers for the year 1961 would be greatly reduced so that the proposed tax deficiency would be $4,468.40, rather than $12,228.74, and the penalty would be only $298.42, instead of $6,864.37. Moreover, the nature of the penalty was changed from civil fraud to one based upon negligence. It is also clear that for the year 1962, the Government proposed a tax deficiency of $8,694.13, instead of $11,622.77, and a civil fraud penalty of $4,824.77, instead of $5,889.-09, and for the year 1963, a tax deficiency of $34,017.87, instead of $41,382.66, and a civil fraud penalty of $17,758.94, instead of $21,441.33. While the parties differ as to why these reductions were made or proposed, it is undisputed that the following sequence of events then took place. In October 1966, the taxpayers executed Form 870–AD as to 1962 and 1963. This form is entitled "Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and

---

1. Rock Island R. R. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188 (1920).

of Acceptance of Overassessment." On November 7, 1966, the Commissioner accepted the Offer of Waiver. On November 14, 1966, by stipulation of the parties, the Tax Court decided taxpayers' then pending suit concerning the · year 1961, finding a deficiency of $4,468.40 and a negligence penalty of $298.42, the amounts previously agreed upon. On December 28, 1966, the taxpayers paid the deficiencies in taxes and civil fraud penalties for the years 1962 and 1963, as previously determined by the Government after the negotiations. The Tax Court decision as to 1961 became final in February 1967. In April, the taxpayers filed claims for refund of the fraud penalties for the years 1962 and 1963. In June, their claims were disallowed. Their civil action for a refund was filed in the district court in March 1968.

Thus, plaintiffs ended up with a reduced liability for the year 1961 and no civil fraud penalty, confirmed by a Tax Court decision which is now final. At the same time, plaintiffs apparently felt free to claim a refund for the civil fraud penalties they paid for 1962 and 1963. The Government cries foul. It says that the reductions for the year 1961 were part of a package deal for the three years and that the taxpayers agreed that their liabilities for the next two years, while lower than those originally proposed by the Government, would still contain substantial civil fraud penalties.

■ A literal reading of Form 870–AD signed by plaintiffs would conclu-

sively support the Government's position. The form provides that:

> If this proposal is accepted by or on behalf of the Commissioner * * * *no claim for refund or credit shall be filed or prosecuted for the year(s) above stated* * * *. [Emphasis added.]

Nevertheless, there is a hoary line of cases holding that the taxpayer's promise is not binding, primarily on the ground that only a formal closing agreement or compromise [2] could make it so. See, e. g., Uinta Livestock Corp. v. United States, 355 F.2d 761, 765 (10th Cir. 1966); United States v. Prince, 348 F. 2d 746, 749 (2d Cir. 1965); Joyce v. Gentsch, 141 F.2d 891, 894–895 (6th Cir. 1944). Cf. Botany Worsted Mills v. United States, 278 U.S. 282, 288–289, 49 S.Ct. 129, 73 L.Ed. 379 (1929). The rule has withstood the criticism of eminent authorities, see, e. g., Griswold, Finality in Administrative Settlements in Tax Cases, 57 Harv.L.Rev. 912 (1944), and it is a measure of its acceptance that the Government failed to attack it on appeal even though the language of Form 870–AD varies somewhat from that used in some of the earlier cases.[3] Thus, the Government is relegated to arguing that taxpayers are equitably estopped from claiming the refund. Taxpayers deny that they are estopped, and point out that, in any event, there are unresolved issues of fact.

In the district court, both parties moved for summary judgment. Citing various authorities, Chief Judge Hender-

---

2. Int. Rev. Code of 1954, §§ 7121, 7122. The Government explicitly disavows reliance on either section.

3. Earlier cases were often in part decided on the ground that the written instrument lacked mutuality: "The right to assess a further deficiency was expressly reserved. The waiver agreement was, therefore, entirely lacking in essential mutuality." Joyce v. Gentsch, *supra*, 141 F.2d at 895. See generally Gutkin, Informal Federal Tax Settlements and Their Binding Effect, 4 Tax L.Rev. 477 (1949). Later versions of the form, informed Federal Tax Settlements and

cluding the one in this case, contained the following language:
> If this proposal is accepted by * * * the Commissioner, the case shall not be reopened in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, an important mistake in mathematical calculation. * * *
More recent decisions have eschewed discussion of mutuality and have relied on the failure of the form to meet the requirements of formal closing or compromise agreements. See, e. g., Cuba R. R. v. United States, 124 F.Supp. 182 (S.D. N.Y.1954).

son first defined the circumstances under which the doctrine of equitable estoppel would be applied:

(1) there must be false representation or wrongful misleading silence; (2) the error must originate in a statement of fact, not in opinion or a statement of law; (3) the one claiming the benefits of estoppel must not know the true facts; and (4) that same person must be adversely affected by the acts or statements of the one against whom an estoppel is claimed.

Then, the judge held:

[T]he government, in negotiating with the plaintiffs regarding their tax liabilities, was led by the wrongful misleading silence of the plaintiffs to believe that a stipulated decision entered in the tax court regarding 1961 and a compromise of the years 1962 and 1963 would forever end the disputes between the taxpayers and the government for those tax years. The government assumed that no claims for refund would be made and, when such claims were made, was adversely affected by the entry of a judgment in the tax court regarding taxable year 1961.

Accordingly, the judge ruled that the doctrine of equitable estoppel defeated plaintiffs' claim for refund. While we have no quarrel with the district court's statement of the applicable law, see United States v. Prince, 348 F.2d 746, 749–750 (2d Cir. 1965), citing with approval Morris White Fashions, Inc. v. United States, 176 F.Supp. 760 (S.D.N. Y. 1959), we believe that the grant of summary judgment was not proper.

██ Fed.R.Civ.P. 56(c) provides that upon motion and under appropriate circumstances summary judgment "shall be rendered forthwith." But one of the necessary circumstances is that there be "no genuine issue as to any material fact." We do not believe that on this

record that requirement is met. The affidavits submitted in the district court by two attorneys representing the Government in the 1965–66 negotiations with plaintiffs make clear that the Government

considered the settlement for tax years 1962 and 1963 to be an integral part of the settlement for tax year 1961, and that if accord for tax years 1962 and 1963 could not have been reached, tax year 1961 would not have been settled in the manner that it was, as reflected in the stipulated decision in the Tax Court, and in all likelihood a trial of the issues for tax year 1961 would have resulted.

On the other hand, the affidavits submitted by plaintiffs support the view that they never agreed to the proposed liabilities for 1962 and 1963. According to these papers, the Commissioner's proposed tax deficiencies and civil fraud penalties in 1962 and 1963 were reduced because taxpayers were

able to substantiate items of deductions and refute assertion of additional income by defendant and not because of any concession on the part of the Internal Revenue Service and accordingly the corresponding proposed civil fraud penalty was reduced because it is determined upon the amount of the deficiencies in taxes.

It is thus evident that clear-cut issues of fact remain unresolved. It may be that a trier of fact would ask why the Government agreed to the substantial reductions in taxpayers' liability for 1961 if it did not receive something in return. But neither we nor the district court could know, on this record, exactly what did occur or whether there was a relevant statement of intention or a "wrongful misleading silence." Obviously, the taxpayers played their cards close to the vest, although whether excessively so remains to be determined. The key questions are whether there was a false representation or wrongful

misleading silence by plaintiffs regarding their intention not to claim a refund for 1962 and 1963, upon which the Government relied to its detriment. On this record, determination of those issues is for the trier of fact after a trial, not for the district court on a motion for summary judgment.

Reversed and remanded.