**Arthur L. STAIR and Bernice Stair, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 856, Docket 74-2625.

United States Court of Appeals, Second Circuit.

Argued April 16, 1975.

Decided May 9, 1975.

---

12. Otten v. Baltimore & O. R.R., 205 F.2d 58, 61 (2d Cir. 1953).

David G. Stearns, Binghamton, N. Y. (Stearns & Stearns, Binghamton, N. Y., on the brief), for plaintiffs-appellants.

J. Ross MacBeth, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Gary R. Allen, Atty., Tax Div., Dept. of Justice, Washington, D. C., on the brief; James M. Sullivan, Jr., U. S. Atty., of counsel), for defendant-appellee.

Before KAUFMAN, Chief Judge, and SMITH and TIMBERS, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

We are presented in this case with a rather interesting illustration of tax gamesmanship. The taxpayers' essential contention is "Heads I win, tails you lose." The dispute arises from a filing by Arthur and Bernice Stair for a refund of taxes paid for the taxable year ended December 31, 1964, seeking to undo an informal settlement agreement embodied in a Form 870–AD.

## I

The facts were stipulated before the district court. Arthur Stair, sole proprietor of Stair Builders, was engaged in the business of developing and building housing subdivisions. The joint return which he and his wife timely filed for the 1964 tax year claimed as a long-term capital gain the amount received upon the condemnation of 95.396 acres of land. The Internal Revenue Service, however, chose to consider the property as land held for sale to customers in the ordinary course of business, and the gain upon condemnation as ordinary income. It proposed a deficiency of $83,065.69 against the Stairs for 1964, almost all of which was attributable to its characterization of the condemnation proceeds.

The taxpayers engaged an attorney, Harry Bangilsdorf, and a certified public accountant to negotiate a settlement, but after conference with Internal Revenue Service appellate conferee Robert J. Lyden in August of 1966, the Stairs' representatives recommended litigation of the issue. Several months thereafter, in October of the same year, Mr. Stair met personally with Mr. Lyden, and the two men eventually agreed upon a payment of roughly 50% of the deficiency originally assessed. Mr. Stair's representatives knew that the conference was being scheduled. Form 870–AD was executed in November stating that the case would not be reopened by the Commissioner

in the absence of fraud, malfeasance, concealment of misrepresentation of material fact, an important mistake in mathematical calculation, or an excessive tentative allowance of a net operating loss carryback.

The form also provided that "no claim for refund or credit shall be filed or prosecuted" by the taxpayers.

On December 30, 1966 the Stairs paid the deficiency of $41,420.54 plus accrued interest, as set forth in the Form 870–AD. Some two years later, on November 25, 1968, the taxpayers filed a Form 843 claim for refund of $39,502.54 and the appropriate interest, the portion of their 1966 payment attributable to ordinary income treatment of the monies received from the condemnation. The decision to do so was prompted by Mr. Bangilsdorf's suggestion that a recently decided case supported the taxpayers' claim for long-term capital gains treatment. Commissioner v. Tri-S Corp., 400 F.2d 862 (10th Cir. 1968). At the time the refund claim was filed, the statute of limitations on assessment barred the Internal Revenue Service from asserting its claim to the remainder of the 1964 deficiency conceded in the settlement agreement.

The Service rejected the Stairs' claim on March 19, 1969, and this action was thereafter begun in the United States District Court for the Northern District of New York. Judge Port granted the Government's motion for summary judgment, holding that the taxpayers were estopped by the failure to assert their claim until after the period of limitations had run against the Government.

## II

Although the Internal Revenue Code has long provided procedures for definitive settlement [1] or compromise [2] of tax disputes, limitations on the authority to execute such agreements [3] have necessitated the use of less formal methods for resolving controversy short of litigation.[4] Chief among those used for the enforcement of the income tax laws is the Form 870–AD, the Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment. In addition to providing a waiver of the restrictions set forth in the Internal Revenue Code of 1954, § 6213(a), see id. at § 6213(d), that form contains clear representations that the taxpayer shall file no claim for a refund, and that the Commissioner will not reopen the case absent certain enumerated circumstances not here relevant.

The binding force of such an agreement upon each of the parties is generally no stronger than their adherence to the maxim that *"pacta sunt servanda."* For the Supreme Court, considering the predecessor of the current provision for closing agreements, Rev.Stat. § 3229, concluded that

> Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, requiring therefor the concurrence of the Commissioner and the Secretary, and prescribing the formality with which . . . it should be attested . . . .

Botany Worsted Mills v. United States, 278 U.S. 282, 288, 49 S.Ct. 129, 131, 73 L.Ed. 379 (1929). A similar construction has been applied without disagreement to § 7121, presently in force. See e. g., Lignos v. United States, 439 F.2d 1365, 1367 (2d Cir. 1971); Uinta Livestock Corp. v. United States, 355 F.2d 761, 765

---

1. Int.Rev.Code of 1954, § 7121; Int.Rev.Code of 1939, § 3760; Act of May 29, 1928, c. 852, § 606, 45 Stat. 874, amended, Act of May 28, 1938, c. 289, §§ 801, 802, 52 Stat. 573; Revenue Act of 1926, c. 27, § 1106(b), 44 Stat. 113; Revenue Act of 1921, c. 136, § 1312, 42 Stat. 313; Rev.Stat. § 3329; Revenue Act of 1868, c. 186, § 102, 15 Stat. 166.

2. Int.Rev.Code of 1954, § 7122; Int.Rev.Code of 1939, § 3761; Rev.Stat. § 3229, amended, Act of May 28, 1938, c. 289, § 815, 52 Stat. 578; Revenue Act of 1868, c. 186, § 102, 15 Stat. 166.

3. Section 7121(a) provides that "The Secretary or his delegate is authorized to enter into an agreement in writing with any person relating to the liability of such person . . . in respect of any internal revenue tax for any taxable period." Similar restrictions were imposed by the predecessors of the present section.

4. See E. Griswold, Finality of Administrative Settlements in Tax Cases, 57 Harv.L.Rev. 912, 916 (1944).

(10th Cir. 1966). *Botany Mills*, however, left open the question whether an informal settlement agreement, "though not binding in itself, may when executed become, under some circumstances, binding on the parties by estoppel . . . ." 278 U.S. at 289, 49 S.Ct. at 132. The Court found it unnecessary to consider that issue since the Government conceded in its brief that "[n]o ground for the United States to claim estoppel is disclosed in the findings." *Id*. at 288, 49 S.Ct. at 131.[5]

The Government here bases its claim of estoppel on the fact that it may no longer assert its claim to that portion of the deficiency which it conceded in the settlement embodied in the Form 870–AD, since Internal Revenue Code of 1954, § 6501(a) bars assessments after three years from the due date of the return. The argument cannot, of course, rest merely on the fact that the taxpayer may have a longer time to seek a refund, for the Code itself permits such a result by authorizing claims for a credit or refund within two years from the date of payment. Internal Revenue Code of 1954, § 6511(a).[6] Recognizing this fact the Government points to an additional circumstance not presented in the ordinary case. It asserts with some vigor that it was lulled into accepting the December 30, 1966 payment as a

final resolution of the controversy, by the taxpayers' promise that "no claim for refund or credit shall be filed or prosecuted."

Although this question has been presented on other occasions, the variety of answers which have been given are inconsistent, unclear in some instances, and certainly not dispositive of this case because of the unusual facts presented.[7] Some circuits have refused to allow claims for a refund which would have the effect of undoing settlement agreements involving several taxpayers,[8] or more than one disputed claim made by a single taxpayer.[9] These cases, however, might seem to present more appealing grounds for estoppel, since the Government's right to assess deficiencies against other taxpayers or on taxable items not involved in the suit, although time-barred, was unquestioned. In this case, it is argued, the Government has only lost a claim—to ordinary income treatment of all the revenues received upon condemnation of the Stairs' property—whose very merit has been put in issue by the filing of suit.

Several courts have refused to apply the doctrine of equitable estoppel, holding that the Government is sufficiently protected by its ability to set off uncollected deficiencies against the claim made by the taxpayer.[10] But these cases

---

5. It appears, despite the Government's perhaps too hasty concession, that the statute of limitations on assessments may have run in *Botany*. Section 14(a) of the Revenue Act of 1916, ch. 463, 39 Stat. 772 provided for a three-year period of limitations on assessments. The tax involved related to fiscal 1917, and the refund suit was not begun until September of 1924.

6. Thus, for example, a taxpayer will have more than three years to file his claim whenever an audit is completed—and payment made—more than one year after the due date of the return.

7. See the cases collected in 9 J. Mertens, Law of Federal Income Taxation § 52.07, at nn. 38–38.7 (1971).

8. Cooper Agency v. United States, 301 F.Supp. 871 (D.S.C.1969), aff'd per curiam, 422 F.2d 1331 (4th Cir.), cert. denied, 400 U.S. 904, 91 S.Ct. 143, 27 L.Ed.2d 141 (1970); Cain v. Unit-

ed States, 255 F.2d 193 (8th Cir. 1958); D. D. I. Inc. v. United States, 467 F.2d 497, 199 Ct.Cl. 380 (1972), cert. denied, 414 U.S. 830, 94 S.Ct. 61, 38 L.Ed.2d 65 (1973).

9. General Split Corp. v. United States, 500 F.2d 998 (7th Cir. 1974); Cain v. United States, 255 F.2d 193 (8th Cir. 1958); Guggenheim v. United States, 77 F.Supp. 186, 111 Ct.Cl. 165 (1948), cert. denied, 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441 (1949).

10. *See, e. g.*, Girard v. Gill, 261 F.2d 695, 699 (4th Cir. 1958); Joyce v. Gentsch, 141 F.2d 891, 896 (6th Cir. 1944); Morris White Fashions, Inc. v. United States, 176 F.Supp. 760, 765 (S.D.N.Y.1959); Specialty Leather Goods Co., Inc. v. United States, 64–2 U.S. Tax Cas. ¶ 9656 (S.D.N.Y.1964). The Third Circuit enunciated a similar doctrine in Bank of New York v. United States, 170 F.2d 20 (3d Cir. 1948). In that case, however, a note attached to the waiver expressly reserved the right to

followed upon settlement agreements compromising several claims, not all of which were in issue. In the instant case, the only item which has ever been in dispute is the subject of the litigation. Thus, the Government would have no further claim to set off against a victorious taxpayer.

Other cases have either flatly accepted [11] or flatly rejected [12] the contention that the mere running of the statute of limitations on assessments is sufficient to preclude a taxpayer's action for refund. The considerations upon which the stricter view of estoppel rests were set forth in Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971);

> (1) there must be a false representation or wrongful misleading silence; (2) the error must originate in a statement of fact, not in opinion or a statement of law; (3) the one claiming the benefits of estoppel must not know the true facts; and (4) that same person must be adversely affected by the acts or statements of the one against whom an estoppel is claimed.

In *Lignos* we found the proof that the Government had been adversely affected much too uncertain to warrant summary judgment in its favor. For according to the plaintiffs' affidavits, the proposed tax deficiencies and civil fraud penalties for 1962 and 1963 had been reduced because the taxpayers had been "able to substantiate items of deductions and refute assertion of additional income . . and not because of any concession on the part of the Internal Revenue Service . . . ." *Id.* Thus even if the "settlement" for those two years were permitted to be undone after the statute of limitations on assessments had run, the Government might have lost no claim which it could not assert in the suit for a refund. Proof of the taxpayers' claim that the Government had made no concession was, of course, a matter for the determination of the district court on remand.

Here, the adverse effect on the Government is crystal clear. Contrary to the Stairs' claim that Commissioner v. Tri-S Corp., *supra*, is dispositive of the merits of their refund claim, the proper tax treatment of condemned property held by a real estate developer is far from uncontroverted and still the subject of considerable doubt. *See, e. g.,* Juleo, Inc. v. Commissioner of Internal Revenue, 483 F.2d 47 (3d Cir.) (revenues received on condemnation are ordinary income), cert. denied, 414 U.S. 1103, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973). *Cf.* Stockton Harbor Industrial Co. v. Commissioner of Internal Revenue, 216 F.2d 638 (9th Cir. 1954), cert. denied, 349 U.S. 904, 75 S.Ct. 581, 99 L.Ed. 1241 (1955). By its reliance on the taxpayers' promise not to file for a refund, the Government lost its opportunity to litigate the issue of capital gain or ordinary income treatment, and to collect the full deficiency originally assessed if successful.

The Stairs assert that equitable estoppel is improper in any event, since no misrepresentation was made at the time they signed the Form 870–AD. Rather, the argument proceeds, their intention to file for a refund did not crystallize until after *Tri-S Corp.* was decided in August of 1968, several months after the period of limitations on assessments had expired. We may note preliminarily that

---

file a claim for refund of any portion of the tax in question. *Id.* at 23, 24. This Circuit too rested its affirmance of summary judgment for the Government in Cuba Railroad Co. v. United States, 254 F.2d 280 (2d Cir.), cert. denied, 358 U.S. 840, 79 S.Ct. 64, 3 L.Ed.2d 75 (1958), upon the possibility of equitable recoupment. The Court expressly noted, however, that it "assume[d] without deciding that Form 870–TS, left it open to the plaintiff to recover the claimed refund . . . ." *Id.* at 281.

**11.** Daugette v. Patterson, 250 F.2d 753 (5th Cir. 1957), cert. denied, 356 U.S. 902, 78 S.Ct. 561, 2 L.Ed.2d 580 (1958); Cain v. United States, 255 F.2d 193 (8th Cir. 1958); Hunt v. United States, 175 F.Supp. 665, 667 (E.D.Tex. 1959).

**12.** Bennett v. United States, 231 F.2d 465 (7th Cir. 1956); Uinta Livestock Corp. v. United States, 355 F.2d 761 (10th Cir. 1966).

that decision did little but reinforce the advice which Mr. Bangilsdorf offered after meeting with the appellate conferee in August of 1966 to which we referred earlier. We note also that the Tax Court opinion which was affirmed in *Tri-S Corp.* had been handed down on June 15, 1967, long before the statute of limitations had run against the Government. 48 T.C. 316.

Quite apart from such considerations, however, we conclude that the statement that no refund claim would be filed—once the taxpayer has reneged—is misrepresentation of a kind sufficient to ground estoppel. *See* D. D. I., Inc. v. United States, 467 F.2d 497, 199 Ct.Cl. 380 (1972) (intervening decision going to merits of taxpayers' claim), cert. denied, 414 U.S. 830, 94 S.Ct. 61, 38 L.Ed.2d 65 (1973); Guggenheim v. United States, 77 F.Supp. 186, 111 Ct.Cl. 165 (1948) (intervening retroactive statute), cert. denied, 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441 (1949). To insist that the Government must fail since it cannot establish that the statement was a misrepresentation at the time it was made, ignores the reality of the situation. For the misrepresentation in fact inheres in the failure to state—at the time the settlement is made—that the representation is only conditional, and that there are circumstances under which the promise may be revoked. We may be sure that, had the Stairs explicitly reserved the right to seek a refund in the event of a later favorable decision on the condemnation issue, the Commissioner would have been considerably less willing to forego his right to assess a full deficiency.

We feel constrained to note that prudential considerations dictate the same result as we reach today. It requires little elaboration to demonstrate that a contrary outcome would arm the taxpayer with both a shield and a sword, and permit him to enter the lists with no chance of losing. The Stairs, if allowed to proceed, could fare no worse than the compromise they have already succeeded in negotiating. If victorious on the merits, they would be freed even from the obligation of sustaining their half of that bargain. Given such a state of affairs, it would be an imprudent taxpayer indeed who did not resort to litigation even after compromise. We see little purpose in straining *Botany Mills* to the breaking point in order to accommodate such a result.

Affirmed.