**ELBO COALS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 82–54.**

United States District Court, E.D. Kentucky, Pikeville Division.

May 8, 1984.

W. Keith Shannon, Bruce A. Levy, Pikeville, Ky., for plaintiff.

Dell W. Littrell, Asst. U.S. Atty., Lexington, Ky., Michael J. Salem, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM OPINION

UNTHANK, District Judge.

Plaintiff brought this action, pursuant to 28 U.S.C. § 1346(a)(1), seeking a refund of

income taxes it alleges the Internal Revenue Service erroneously assessed and collected from the plaintiff concerning the plaintiff's tax year ending June 30, 1974. This matter is before the Court on cross-motions for summary judgment. The parties have tendered a very detailed, joint stipulation of the facts, and they have agreed that this action concerns the following issues:

1. Whether the plaintiff is barred from litigating this lawsuit by reason of the doctrine of equitable estoppel on the grounds that plaintiff's 1974 tax year was closed by the execution of a Form 870–AD.

2. Whether the plaintiff's claim for refund is limited to $7,586.75, for the reason that litigation of any greater amount is barred due to the expiration of the applicable statute of limitations as to such greater amounts.

3. Whether plaintiff is entitled to all or any part of the depletion allowance of Internal Revenue Code of 1954, 26 U.S.C. § 611, for its 1974 tax year by reason of its interest in coal mining in that year.

In an effort to succinctly summarize the background chain of events resulting in the filing of this action and the facts to which the parties have stipulated, the record reveals that:

1. The Internal Revenue Service conducted an audit of the plaintiff's 1974 income tax return and determined that the plaintiff was not entitled to any portion of the deduction for the depletion allowance of $553,239.00, which was claimed on the 1974 tax return. The disallowed depletion allowance resulted in a tax deficiency of $265,555.00 being assessed against the plaintiff.

2. During the time frame from 1974 through 1977, the I.R.S. conducted at least one other audit of the plaintiff's tax returns. Plaintiff's tax returns for those four years were subject to numerous amendments resulting from the carryback of an investment credit, the carryback of a net operating loss, and the allowance of a consolidated subsidiary loss.

3. On May 22, 1979, the Regional Office of the Director of Appeals issued an audit statement covering the fiscal years June 30, 1974 through June 30, 1977. In the statement, the I.R.S. retreated from its original position that plaintiff was not entitled to any portion of the claimed depletion allowance of $553,239.00, and the I.R.S. allowed plaintiff a depletion allowance of $192,138.00 for the 1974 tax year.

4. The Court infers that in an attempt to finally resolve the plaintiff's tax liability for the fiscal years from 1974 through 1977, inclusive, and to put an end to the continuing adjustments to plaintiff's income tax liability for those years, the parties hereto executed Form 870–AD, Offer of Waiver of Restrictions on Assessments and Collection of Deficiency in Tax and of Acceptance of Overassessment, which, by its language, except for circumstances not present herein, ostensibly closed the door to any additional adjustments in the plaintiff's income tax returns for the aforementioned years.

5. The Form 870–AD was signed by the plaintiff on June 5, 1979, and it was accepted for the Commissioner of Internal Revenue on June 19, 1979.

6. Subsequently, on July 9, 1979, the I.R.S. determined that plaintiff owed interest in the amount of $7,586.75, being the difference between the amount of interest due of $24,100.75, and the net tax overpayment of $16,514.00. The plaintiff paid this difference on July 24, 1979.

7. On June 7, 1981, plaintiff filed a claim for refund of taxes allegedly overpaid for the 1974 tax year in the amount of $173,328.48, plus interest. The I.R.S. did not act on plaintiff's claim for refund, resulting in the filing of this action to collect said taxes.

The Court shall first address the issue of whether the doctrine of equitable estoppel should operate to estop plaintiff from proceeding herein.

A review of the current state of the law concerning equitable estoppel indicates that there is no general consensus among the different Circuit Courts of Appeal, as is pointed out in *McGraw-Hill, Inc. v. United States*, 623 F.2d 700 (U.S. Court of Claims, 1980), as follows:

There is a long-standing conflict amount [sic] the federal courts as to whether a taxpayer can be estopped from suing for a refund by an agreement less formal than the closing agreement or compromise statutorily described in Sections 7121 and 7122 of the Code. However, the Court of Claims has consistently adhered to a more "liberal" view of estoppel. It has applied the doctrine of equitable estoppel whenever the I.R.S. cannot be placed in the same position it was in when the agreement was executed.

*Ibid*, at 706.

Before analyzing other case law dealing with equitable estoppel, the Court is of the opinion that a portion of the relevant language contained in Form 870–AD should be set forth below:

This offer is subject to acceptance for the Commissioner of Internal Revenue. It shall take effect as a waiver of restrictions on the date it is accepted. Unless and until it is accepted, it shall have no force or effect. If this offer is accepted for the Commissioner, the case shall not be reopened in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, an important mistake in mathematical calculation, or excessive tentative allowances or carrybacks provided by law; and no claim for refund or credit shall be filed or prosecuted for the year(s) stated above other than for amounts attributed to carrybacks provided by law.

Turning now to the defendant's argument, in support of its position that this action should be barred by equitable estoppel, the defendant relies on the factually similar case of *Stair v. U.S.*, 516 F.2d 560 (CA2, 1975). In *Stair*, the taxpayers' treatment of condemnation proceedings as a long-term capital gain was disallowed by the I.R.S., which determined that this income should be taxed as ordinary income, and the I.R.S. proposed a deficiency against the Stairs.

The dispute over the correct classification of the income from the condemnation proceeding advanced to the appellate conferee level; however, prior to litigating this issue, the taxpayer and the appellate conferee reached a compromise whereby the taxpayers agreed to pay roughly 50% of the deficiency originally assessed. *Ibid*, at 561.

Subsequently, the parties executed Form 870–AD, which has the same pertinent language as the Form 870–AD in the case at bar, which is set forth above. On December 30, 1966, the Stairs paid the compromised deficiency, plus accrued interest.

The language of the foregoing Form 870–AD notwithstanding, approximately two years subsequent to the payment of the tax deficiency, on November 25, 1968 the taxpayers filed a Form 843 claim for refund on the portion of their 1966 payment attributable to the treatment of the monies received from the condemnation as ordinary income. At the time the refund claim was filed, the statute of limitations on assessment barred the I.R.S. from asserting its claim to the remainder of the 1964 deficiency which it had conceded in the settlement agreement. *Ibid*, at 562.

The I.R.S. rejected the Stairs' claim for refund, and the United States District Court for the Northern District of New York granted the government's motion for summary judgment, holding that the taxpayers were estopped by the failure to assert their claim until after the period of limitations had run against the government. *Ibid*, at 562.

On appeal to the United States Court of Appeals for the Second Circuit, Chief Judge Irving R. Kaufman affirmed the district court, holding that,

. . . statement that no refund claim would be filed, in settlement agreement arising out of dispute as to whether revenues received upon condemnation of tax-

payers' property were subject to ordinary income or long-term capital gain treatment, was a misrepresentation of a kind sufficient to ground estoppel once taxpayers reneged by filing for a refund of taxes paid after period of limitations had run against Government.

*Ibid,* at 561.

The Court observes that the main ingredients found in *Stair* are also present in this action, *viz.,* (1) the dispute between the taxpayer and the I.R.S. was apparently resolved when the parties executed the Form 870–AD in June of 1979; (2) the I.R.S. gave up its right to reopen the case for the tax years in question; (3) the taxpayer agreed to not file a claim for refund or credit for those same years; (4) subsequent to the execution and acceptance of the Form 870–AD, the taxpayer paid the difference between the interest on a deficiency and a credit for an overassessment; (5) the statute of limitations had run against the government (on September 17, 1979); (6) approximately two years later, on June 4, 1981, the taxpayer filed a claim for refund pertaining to the depletion allowance.

The defendant asserts that *Stair v. U.S., supra,* is factually indistinguishable from the present action and submits that the manner in which the Second Circuit dealt with the issue of equitable estoppel should be equally applicable herein. The Second Circuit stated as follows:

> The Stairs assert that equitable estoppel is improper in any event, since no misrepresentation was made at the time they signed the 870–AD. Rather, the argument proceeds, their intention to file for refund did not crystallize until after *Tri-S Corp.* was decided in August of 1968, several months after the period of limitations on assessments had expired...
>
>     *     *     *     *     *     *
>
> Quite apart from such considerations, however, we conclude that the statement that no refund claim would be filed— once the taxpayer has reneged—is misrepresentation of a kind sufficient to ground estoppel. (Citations omitted) ...

> To insist that the Government must fail since it cannot establish that the statement was a misrepresentation at the time it was made, ignores the reality of the situation. For the misrepresentation in fact inheres in the failure to .state—at the time the settlement is made—that the representation is only conditional, and that there are circumstances under which the promise may be revoked. We may be sure that, had the Stairs explicitly reserved the right to seek a refund in the event of a later favorable decision on the condemnation issue, the Commissioner would have been considerably less willing to forego his right to assess a full deficiency.

*Ibid,* at 564–565.

The plaintiff relies on *Joyce v. Gentsch,* 141 F.2d 891 (CA6, 1944), to support its position that the Sixth Circuit has rejected the doctrine of equitable estoppel as a means of extinguishing a claim for refund in a similar case. Although there are some common features between *Joyce* and the instant action, the major differences outweigh the similarities; therefore, the Court finds that the plaintiff's reliance on *Joyce* is misplaced.

The main distinguishing point in *Joyce* is that the language of the Form 870 (a predecessor to the Form 870–AD) signed by the taxpayer did not preclude the I.R.S. from asserting a further deficiency against the taxpayer if the I.R.S. subsequently determined that additional tax is due. Furthermore, the Form 870 was not signed by or accepted on behalf of the Commissioner of Internal Revenue. The Sixth Circuit held that since the informal closing was not binding on the government, it therefore did not bind the taxpayer.

In the instant action, the Form. 870–AD was accepted on behalf of the Commissioner. Pursuant to the language of the document entered into by the parties, the taxpayer promised to not file an additional claim for refund for the tax years 1974 through 1977, and the I.R.S. agreed to not impose any further assessments or deficiencies. Additionally, in the process of the

negotiations, the I.R.S. allowed plaintiff a portion of the disputed depletion allowance. The bottom line is that both parties made mutual concessions, and both parties agreed to be bound by those concessions.

A review of the facts herein leads the Court to conclude that this matter is ripe for the application of the doctrine of equitable estoppel, on the grounds that (1) the parties apparently mutually agreed to conclude their ongoing dispute over the plaintiff's tax liability by executing Form 870–AD, and (2) the plaintiff did not file its claim for refund until after the statute of limitations had run against the I.R.S. Therefore, the I.R.S. could not be placed in the same position it was in when the agreement was executed.

In the final analysis, a comparison of this action with *Stair v. U.S., supra,* persuades the Court that *Stair* is virtually on all fours with the case at bar. Consequently, the Court is of the opinion that on such authority, the doctrine of equitable estoppel is likewise applicable to the present action, and that the defendant is entitled to summary judgment as a matter of law.

The Court has reviewed the record herein and now finds that there are no genuine issues of material fact, as the parties have stipulated.

Therefore, the Court holds that this action should be resolved by application of the doctrine of equitable estoppel against the plaintiff. It is unnecessary for the Court to address the remaining issues raised by the parties.

An Order in accordance with this memorandum opinion will issue herewith.