**ELBO COALS, INC.,
Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 84–5504.

United States Court of Appeals,
Sixth Circuit.

Argued April 19, 1985.

Decided June 10, 1985.

Ross Harris, W. Keith Shannon (argued), Bruce A. Levy, Pikeville, Ky., for plaintiff-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, Dept. of Justice, Tax Div., Washington, D.C., Richard Farber (argued), George L. Hastings, Jr., for defendant-appellee.

Before KENNEDY and MILBURN, Circuit Judges; and GUY, District Judge.[*]

MILBURN, Circuit Judge.

Plaintiff appeals the decision of the district court granting the defendant's motion for summary judgment in this action seeking a refund of taxes. 588 F.Supp. 745 (E.D.Ky.1984). We affirm.

## I.

Plaintiff, a Kentucky corporation engaged in the buying, processing, and selling of coal, claimed a mineral depletion allowance deduction on its 1974 federal tax return which was subsequently disallowed by the Internal Revenue Service ("IRS"). Thereafter, audits and amendments for the years 1975–1977 resulted in additional adjustments, both up and down, to numerous items on plaintiff's returns. In 1979, representatives of plaintiff and the IRS reached an informal agreement resolving plaintiff's tax liabilities for its taxable years 1974–1977, which resulted in the issuance of an audit statement by the IRS.

On June 5, 1979, representatives of plaintiff signed an "Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment," on Form 870–AD, agreeing to the tax liabilities and overpayments as computed in the audit statement covering plaintiff's tax years 1974–1977. The form was accepted on behalf of the Commissioner of the IRS on June 19, 1979. In the agreement, the Commissioner agreed that the subject tax years would not be reopened

absent certain well-defined exceptions which are not applicable herein, and the plaintiff agreed not to seek a refund. On July 9, 1979, the IRS billed plaintiff for the net amount owed pursuant to the agreement, which plaintiff paid on July 24, 1979.

By 1981, the statute of limitations had run against the IRS for any of the taxable years 1974–1977. On June 7, 1981, however, plaintiff, against whom the applicable statute of limitations had *not* run as a result of its July 24, 1979, payment, filed a claim for refund of taxes paid with respect to its taxable year 1974. After the IRS did not act upon the refund request within six months, plaintiff filed the present action. The district court thereafter granted defendant's motion for summary judgment holding that the plaintiff is barred from seeking the refund under the doctrine of equitable estoppel as set forth in *Stair v. United States*, 516 F.2d 560 (2d Cir.1975).

## II.

In *Stair*, the IRS had disallowed a long-term capital gain claimed by the taxpayers, which resulted in a proposed deficiency. After attempted negotiations failed, the taxpayers' representatives recommended litigation of the issue. Several months thereafter, one of the taxpayers met with an agent of the IRS and the two agreed upon a payment of roughly fifty per cent (50%) of the deficiency originally assessed. The agreement was thereafter embodied in the execution of Form 870–AD. The taxpayers then paid the deficiency.

Some two years later, the taxpayers filed a claim for refund for taxes paid pursuant to the 870–AD agreement. At the time the refund claim was filed, the statute of limitations barred the IRS from asserting a claim to the remainder of the deficiency conceded in the settlement agreement. After the taxpayers filed suit, the district court granted the government's motion for summary judgment, holding that the tax-

[*] The Honorable Ralph B. Guy, Jr., Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

payers were estopped by the failure to assert their claim before the statute of limitations had run against the government.

On appeal, the Second Circuit first noted in *Stair* that the use of equitable estoppel in similar tax refund cases derives from the Supreme Court's opinion in *Botany Worsted Mills v. United States*, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929). In *Botany Mills*, the Supreme Court held that agreements between taxpayers and the IRS which do not satisfy the formalities set forth in the Internal Revenue Code [1] for a definitive settlement or compromise are not binding on the government or the taxpayer. However, as the Second Circuit noted, *Botany Mills* left open the question whether an informal settlement agreement, "though not binding in itself, may when executed become, under some circumstances, binding on the parties by estoppel...." *Stair*, 516 F.2d at 563 (quoting *Botany Mills*, 278 U.S. at 289, 49 S.Ct. at 132).

After reviewing the case law which developed following the *Botany Mills* decision, the Second Circuit in *Stair* affirmed the decision of the district court. The court concluded that the taxpayers were estopped from claiming a refund because (1) the recital by the taxpayers in the Form 870–AD that no refund claim would be filed—once the taxpayer had reneged—was misrepresentation of a kind sufficient to ground estoppel, and (2) that by its reliance on the taxpayers' promise not to file for a refund, the government was adversely affected when it lost its opportunity to litigate the issue of capital gain or ordinary income treatment, and to collect the full deficiency originally assessed.

In the instant case, the district court was of the opinion that *Stair* is virtually on all fours with the case at bar and that the doctrine of equitable estoppel is likewise applicable to the present action. The plaintiff argues that the above-stated holding is error because this case should be controlled by the principles set forth in *Joyce v. Gentsch*, 141 F.2d 891 (6th Cir.1944), wherein this court refused to hold that the taxpayer was estopped from seeking a refund after signing a modified Form 870 settling a tax dispute and after the statute of limitations had run against the government.

We agree with the government that the instant case is distinguishable from *Joyce*. The Form 870 executed by the taxpayers in *Joyce* was very different from the one at issue here. In the Form 870–AD at issue in this case, the government promised that "the case shall not be reopened in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, an important mistake in mathematical calculation, or excessive tentative allowances or carrybacks provided by law; ..." On the other hand, in *Joyce*, there was no such promise by the government because the Form 870 expressly provided that the execution of the form would not "preclude the assertion of a further deficiency in the manner provided by law should it subsequently be determined that additional tax is due, ..." 141 F.2d at 892. In considering the Form 870 in *Joyce*, it was noted that "by its very terms, an intention not to bind the Government to a final settlement was manifest." *Id.* at 895.

In *Joyce*, therefore, this court concluded that since the government had made no promise not to assess further tax liabilities, it could not have been relying upon an agreement when it failed to assess any deficiencies during the remaining period of the statute of limitations. Moreover, there was no detriment to the government as a result of the *Joyce* "agreement," since it was expressly free, if it had found reason, to further assess deficiencies against the taxpayers. The same cannot be said of the instant agreement, Form 870–AD, since the government expressly promised not to seek further taxes for the years covered by the agreement and relied to its detriment upon

---

1. The requirements for formal settlement and compromise agreements are today set forth in

I.R.C. §§ 7121 and 7122, respectively.

the taxpayer's corresponding promise not to seek a refund of taxes paid.

Here the taxpayer further argues that it is unclear that the government actually made concessions in the agreement, and, therefore, doubt exists as to whether it actually relied upon the agreement, or would suffer any harm from the taxpayer's repudiation. We disagree. It is apparent from the parties' stipulation of facts that the government made substantial concessions, both for the taxable year ending in 1974, and the other years covered in the agreement. For example, for the taxable year ending in 1974, although the IRS originally took the position that the taxpayer's claimed mineral depletion allowance deduction would be disallowed in its entirety, the government later agreed to allow the taxpayer a depletion allowance of One Hundred Ninety-two Thousand, One Hundred Thirty-eight Dollars ($192,138.00) pursuant to the agreement embodied in the Form 870–AD. This fact alone demonstrates that the Commissioner actually made concessions.

Finally, the taxpayer argues that the failure of the government to establish reliance and detriment here is similar to that found in *Uinta Livestock Corporation v. United States,* 355 F.2d 761 (10th Cir.1966), in which the court found that the taxpayer was not estopped from bringing a refund action after the execution of a Form 870–AD. The *Uinta* court based its decision on the ground that there was no false representation contained in the taxpayer's later broken promise not to file a refund. However, we believe the better view is stated in *Stair, supra,* that the statement by the taxpayer that no refund claim would be filed is misrepresentation of a kind sufficient to ground estoppel once the taxpayer has reneged. *See Stair, supra,* 516 F.2d at 565 and cases cited therein.

As to the statement by the *Uinta* court that it should not "breathe life" into the noncontractually binding Form 870–AD, we agree with the government that this statement ignores the fact that in all estoppel situations no enforceable contract exists and that, indeed, where there is an enforceable contract there is no need for invoking equitable estoppel principles. The estoppel doctrine does not convert the Form 870–AD into a binding contract, but merely operates to avoid injustice.

### III.

This case presents "an interesting illustration of tax gamesmanship." *Stair, supra,* 516 F.2d at 561. Under the facts of this case, we are of the opinion that equitable estoppel was appropriately applied to promote the ends of justice. Accordingly, we AFFIRM the decision of the district court.