**William WHITNEY and Barbara Whitney, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 85–2387.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 1987.

Decided Sept. 1, 1987.

Edward M. Alvarez and Charles H. Sabes, San Jose, Cal., for plaintiffs-appellants.

Martha Brissette, Michael L. Paup and Robert S. Pomerance, Washington, D.C., for defendant-appellee.

J. BLAINE ANDERSON, Circuit Judge:

William and Barbara Whitney (Whitneys) are farmers in the Salinas Valley of Monterey County, California. In this regard they lease farm land from other landowners and produce crops from it. In 1975 the Whitneys sold a portion of their farming operation to Melvin and Neil Bassetti (Bassettis). A partnership was formed to purchase the farming operation. Melvin and Neil Bassetti each held a forty-nine percent interest in the partnership while the Whitneys held a two percent interest. The Bassettis paid for the farm by a $1,124,876.00 promissory note. The purchase included $206,048.00 in prepaid rent for farm land leased for 1974 and $287,116.00 for land leased for 1975. The Whitneys deducted the prepaid rent as a business expense on their 1974 and 1975 tax returns.[1] On its 1975 return, the partnership itself also claimed a deduction for prepaid rent. After an audit, the Internal Revenue Service (IRS) disallowed these deductions.

Edward Singleton (Singleton), an accountant, reviewed the deductions taken by the Whitneys, the partnership and the Bas-

---

1. The Whitneys filed joint income tax returns so    they are treated as one taxpayer.

settis, and asked the IRS to allow the deductions to each of them. The IRS sent Singleton a Form 870–AD ("Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment") and indicated that the prepaid rent was not deductible, but that the partnership could deduct a portion of the promissory note as a business expense.

The Whitneys and the Bassettis executed Form 870–AD and returned it to the IRS. The IRS understood execution of the Form 870–AD to mean that the nondeductibility of the prepaid rent was being conceded in exchange for the deduction granted to the partnership. Less than one month after the executed Form 870–AD was accepted by the IRS, this court decided *Zaninovich v. Commissioner*, 616 F.2d 429 (9th Cir. 1980), which held that prepaid rent (such as that deducted by the Whitneys) was a business expense which was deductible in the year of payment. The Whitneys then filed a refund claim for the deductibility of the 1974 prepaid rent based on *Zaninovich*. The IRS denied the claim on the basis of the Form 870–AD, stating that it was a binding settlement agreement.

The Whitneys then filed this suit in district court to seek their refund. They, along with Singleton, alleged Form 870–AD was understood to be simply a suggestion by the IRS as to what the law was with respect to prepaid rent rather than a "package settlement" agreement between them, the partnership and the IRS. The IRS cried foul and moved for summary judgment. The district court granted summary judgment for the government on the ground that the Whitneys were equitably estopped from receiving a refund because they signed the Form 870–AD and the IRS detrimentally relied upon it. The Whitneys appeal the grant of summary judgment

against them. We reverse and remand for further proceedings.

The government argues the language of Form 870–AD conclusively determines that those signing it are barred from seeking a refund.[2] Alternatively, the government contends that the Whitneys are equitably estopped from claiming a refund since it relied on their representations in signing Form 870–AD by letting the statute of limitations run on additional assessments against the partnership.

■ In this circuit, we have not squarely decided whether Form 870–AD *standing alone* estops the executing taxpayers from later seeking a refund. Initially, in *Monge v. Smyth*, 229 F.2d 361 (9th Cir.1956), we peripherally indicated that a Form 870–TS (the predecessor to Form 870–AD), executed prior to a notice of deficiency, was a bilateral agreement when accepted by the IRS and constituted a final determination on a tax deficiency. *Id.* at 367. Later, in *United States v. Price*, 263 F.2d 382 (9th Cir.1959) (en banc), we appropriately ruled that the language in *Monge* concerning the validity of the waiver (Form 870–AD) was dictum. *Price*, 263 F.2d at 385.

Other circuit courts addressing the Form 870–AD question have taken divergent views. Those finding Form 870–AD binds a taxpayer do so largely on grounds of equitable estoppel. *See, e.g., Flynn v. United States*, 786 F.2d 586, 591 (3d Cir. 1986) (dicta) (also applying contract principles); *Elbo Coals, Inc. v. United States*, 763 F.2d 818, 821 (6th Cir.1985); *General Split Corp. v. United States*, 500 F.2d 998, 1004 (7th Cir.1974); *Cain v. United States*, 255 F.2d 193, 199 (8th Cir.1958). Courts holding Form 870–AD does not in itself preclude a taxpayer from seeking a refund find their authority in the theory that a binding settlement agreement under sec-

2. Form 870–AD in part states:
  If this offer is accepted for the Commissioner, the case shall not be reopened in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, an important mistake in mathematical calculation, or excessive tentative allowances of carrybacks provided by law; and no claim for refund or credit shall be filed or prosecuted for the year(s) stated above other than for amounts attributed to carrybacks provided by law.
  However, Form 870–AD also states:
  "NOTE—The execution and filing of this offer ... will not, however, constitute a closing agreement under section 7121 of the Internal Revenue Code."

tion 7121 of the Internal Revenue Code is the exclusive means whereby tax disputes can be settled. *See Arch Engineering Co., Inc. v. United States,* 783 F.2d 190, 192 (Fed.Cir.1986) (dicta); *Lignos v. United States,* 439 F.2d 1365, 1367 (2d Cir.1971); *Uinta Livestock Corp. v. United States,* 355 F.2d 761 (10th Cir.1966); *cf. Cain v. United States,* 255 F.2d 193, 199 (8th Cir. 1958) (Van Oosterhout, J., dissenting). In light of these divergent cases, it is clear the question is not easily answered. The decisions turn on the intricacies of the facts involved. *Compare Lignos v. United States,* 439 F.2d 1365 (2d Cir.1971), *with Stair v. United States,* 516 F.2d 560 (2d Cir.1975).

After reviewing these cases of tax gamesmanship, we believe the nonbinding position is the more logical view consistent with general principles in this area. The language in Form 870–AD is contradictory. As such it should be construed against the drafter.[3] Form 870–AD purports to prevent taxpayers from reopening a disputed tax case without being a settlement agreement under I.R.C. § 7121.[4] Since it is not a valid compromise of a tax deficiency, standing alone it should not estop the executing taxpayer from seeking a refund. *Cf. Botany Worsted Mills v. United States,* 278 U.S. 282, 288, 49 S.Ct. 129, 131, 73 L.Ed. 379 (1929) (an agreement not complying with the statutory requirements for compromises cannot be binding on the taxpayer or the government); *Lignos,* 439 F.2d at 1367 (citing *Botany* ); *Uinta Livestock,* 355 F.2d at 765 (citing *Botany* ).

■ Having found that Form 870–AD standing alone does not control, we arrive at the next question. Should the Whitneys be estopped from seeking a refund because the IRS decided not to seek other assessments against the partnership and allowed the statute of limitations to run against it? We cannot answer this question on the record before us. The district court granted the government summary judgment. Whether equitable estoppel should apply against the Whitneys involves questions of fact and credibility determinations which must be resolved. *See Lignos,* 439 F.2d at 1368; *Uinta Livestock,* 355 F.2d at 767. Chief among these is why the Whitneys would enter into a "package settlement" with the partnership in which they received nothing in return. Also, what was actually said by, and what was the intent of, the parties during the negotiations? If the government believed this was a "package settlement," why didn't it state that in its negotiations with Singleton and the Whitneys? On the record before us, the government can point to no false representations (since Form 870–AD alone will not suffice) by the Whitneys which would justify application of the doctrine of equitable estoppel.[5]

---

3. *See e.g., Flynn,* 786 F.2d at 590, applying contract principles to allow parole evidence to demonstrate the complete absence of agreement.

4. Under I.R.C. § 7121, a closing agreement is authorized as follows:

    CLOSING AGREEMENTS.

    (a) AUTHORIZATION—The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.

    (b) FINALITY—If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

    (1) the case shall not be reopened as to the matters agreed upon or the agreement mod-

ified by any officer, employee, or agent of the United States, and

    (2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

5. For equitable estoppel to be applied:

    (1) there must be false representation or wrongful misleading silence; (2) the error must originate in a statement of fact, not in an opinion or a statement of law; (3) the one claiming the benefits of estoppel must not know the true facts; and (4) that same person must be adversely affected by the acts or statements of the one against whom an estoppel is claimed.

    *Lignos,* 439 F.2d at 1368.

Since a determination of these questions and possibly others requires review by a trier of fact, the district court improperly granted summary judgment.

REVERSED and REMANDED.

CYNTHIA HOLCOMB HALL, Circuit Judge, dissenting:

I agree with the majority's conclusion that the Form 870–AD is not a binding settlement agreement. The government does not dispute this.[1] I vigorously disagree, however, with the majority's conclusion that on the record before us, it cannot decide whether the Whitneys are estopped from seeking a refund. The district court correctly determined that the uncontroverted facts show that the Whitneys are estopped.

The majority outlines the factual questions to be determined on remand: Did the Whitneys make any false representation, required for equitable estoppel? Why did the Whitneys enter into a package settlement with the partnership in which they received "nothing in return"? Why did the parties enter into the settlement negotiations? During the negotiations, why didn't the government state that it viewed the settlement as a package settlement? *Supra* at 898.

These questions are definitively answered on the facts before us. These facts are dispositive despite the majority's decision to ignore them.

First, the majority states that the Whitneys apparently made no false representation. The majority believes that a false representation is a requirement of equitable estoppel. Under the circumstances presented here, I believe that the appropriate test for estoppel does not require a *false* representation. In *Robinson v. Commissioner*, 100 F.2d 847, 849 (6th Cir.), *cert. denied*, 308 U.S. 567, 60 S.Ct. 81, 84 L.Ed. 476 (1939), the court set out these requirements:

The taxpayer, by his conduct, which includes language, acts or silence knowingly makes a representation or conceals material facts which he intends or expects will be acted upon by taxing officials in determining his tax, and the true or concealed material facts are unknown to the taxing officials or they lack equal means of knowledge with the taxpayer, and act on his representation or concealment and to retrace their steps on a different state of facts would cause the loss of taxes to the Government.

*See also R.H. Stearns Co. v. United States*, 291 U.S. 54, 61–62, 54 S.Ct. 325, 328, 78 L.Ed. 647 (1934); *Dickerson v. Colgrove*, 100 U.S. (10 Otto) 578, 580–581, 25 L.Ed. 618 (1879) (estoppel theory). *See Cooper Agency v. United States*, 301 F.Supp. 871, 876 & n. 8 (D.S.C.1969) (citing cases), *aff'd*, 422 F.2d 1331 (4th Cir.), *cert. denied*, 400 U.S. 904, 91 S.Ct. 143, 27 L.Ed.2d 141 (1970). This test is particularly appropriate in the "package deal" context before us. *Id.* at 877.

The Second Circuit has itself expressly rejected the applicability of the *Lignos* test, which the majority utilizes, to the circumstances of this case. *See supra* at n. 5 (applying the test set forth in *Lignos v. United States*, 439 F.2d 1365 (2d Cir.1971)). In *Stair v. United States*, 516 F.2d 560 (2d Cir.1975), the Second Circuit explains that estoppel is available in circumstances similar to those here. The court explained that the *Lignos* requirement of a false representation was not applicable where it is clear that the Commissioner has been adversely affected, particularly by the running of the statute of limitations. *Stair*, 516 F.2d at 564–565.

In *Stair*, the court found that there were grounds for estoppel where the taxpayer misrepresented his position by failing to say, at the time of settlement, that his agreement not to file for a refund was conditional upon the relevant tax law remaining static. *Stair*, 516 F.2d at 565. The court explained:

1. The majority states that the "government argues the language of Form 870–AD conclusively determines that those signing it are barred from seeking a refund." *Supra* at 897. This is not

the case. In its brief on appeal, the government consistently argues only that "[Forms 870–AD] are binding on a taxpayer if the IRS changes its position in reliance on his representation...."

It requires little elaboration to demonstrate that a contrary outcome would arm the taxpayer with both a shield and a sword, and permit him to enter the lists with no chance of losing. The Stairs, if allowed to proceed, would fare no worse than the compromise they have already succeeded in negotiating. If victorious on the merits, they would be freed even from the obligation of sustaining their half of that bargain. Given such a state of affairs, it would be an imprudent taxpayer indeed who did not resort to litigation even after compromise. We see little purpose in straining *Botany Mills* to the breaking point in order to accommodate such a result.

*Id.* at 565.

In this case, the Whitneys represented that they would not sue for a refund, the Commissioner reasonably relied on that representation, and there exists a detriment to the Commissioner, i.e., the expiration of the statute of limitations period for the related parties prevented the Commissioner from recouping concessions made in the package settlement. This detriment cannot be rectified other than by estoppel of the Whitneys. Where there is a settlement with one taxpayer regarding multiple issues, the Commissioner may litigate issues conceded by a settlement even though the statute of limitations has run. *McGraw-Hill, Inc. v. United States,* 623 F.2d 700, 706 n. 7 (Ct.Cl.1980) (doctrine of equitable recoupment). However, where, as here, the statute has run and a multiple taxpayer settlement is involved, the Commissioner "cannot set off deficiencies of other taxpayers against the claims of the plaintiff taxpayers." *Id.; see also D.D.I., Inc. v. United States,* 467 F.2d 497, 500 (Ct.Cl.1972), *cert. denied,* 414 U.S. 830, 94 S.Ct. 61, 38 L.Ed.2d 65 (1973); *Cooper Agency,* 301 F.Supp. at 877. "False representations" therefore should not be required.

The remaining questions allegedly left unanswered for the majority relate to the benefits and existence of a package settlement. The facts clearly demonstrate that the close relationship between the Whitneys, the Bissettis, and the partnership shows that a package settlement was intended, the Whitneys benefited from it, and the Commissioner suffered a detriment from it. It is absurd for the Whitneys to claim that there was no relationship between them and the Bissettis. Not only were they seller and buyer, but they were also partners in the new business.

The deductions taken by the taxpayers are also closely linked. The Whitneys incurred $1,124,376 of expenses in planting and growing crops prior to the March 1, 1975 sale of the business to the partnership. These expenses were deducted on their 1974 and 1975 returns. On the other hand, the profits from the crops when harvested were not reported by the Whitneys (except for 2% flow through to them from the partnership)[2] but were reported by the partnership in 1975 (and 98% flowed through to the Bissettis).

The partnership also claimed the $1,124,376 expense of planting and growing the crops as a deduction on its 1975 return. Ninety-eight percent of the benefit of the deduction flowed through the partnership to the Bissettis and was reported on their 1975 return and 2% was reported on the Whitney's 1975 return (resulting in a double deduction of this 2% on the Whitney's return). The basis of this deduction was the Bissettis' note, which was not paid in 1975. The partnership had not originally claimed this deduction on its return.

Part of the cost of planting and growing crops represented prepaid rent, namely, $206,048 in 1974 and $287,116 in 1975. The Commissioner contended that these prepaid rental expenses were not deductible by the Whitneys in 1974 and 1975. The conferee denied the partnership deduction for the amount of the unpaid note and for the amount of prepaid rent, explaining that a cash basis taxpayer cannot deduct the note until paid and cannot deduct prepaid rent. This presented the partnership with the dilemma of receiving the income from the

---

**2.** A partnership return is solely an information return and all income and deductions flow through to the partners and are reported on the partners' individual returns.

sale of the crops grown but getting no deductions to offset that income. On the other hand, the Whitneys claimed the deductions for the expenses but reported none of the income. The compromise settlement gave both the Whitneys and the partnership the deductions for the cost of planting and growing the crops, except for prepaid rent.

The relationship between the partnership, the Whitneys, and the Bissettis raised questions regarding the propriety of the deductions. First, there was the question of which taxpayers may claim the deductions and for which years. The second question was which taxpayer must report the income from the sale of the crops.

The Commissioner could have resolved these issues in numerous ways. As a matter of accounting, the Commissioner could have attempted to match the expenses and the income and attributed both to one taxpayer or the other. Under section 482 of the Internal Revenue Code, the Commissioner could have allocated the income among the related entities on the basis of which taxpayer's work and money gave rise to the income. 26 U.S.C. § 482. Under the tax benefit rule, the Commissioner could have denied the deductions to the entity that did not report the income. Therefore, under the settlement, the Commissioner relinquished all these possible resolutions of the issues, and the partnership thereby benefited.

The Whitneys further benefited from the settlement because of the disparate financial circumstances of the two groups of taxpayers. Because the Whitneys were high income taxpayers, the deductions were more valuable to the Whitneys than to the Bissettis who could not use all their deductions in 1975 or in the three-year carryback years and the five-year forward years. The income was more valuable to the Bissettis.

The close relationship between the Whitneys and Bissettis and the "package" nature of the settlement are further illustrated by the fact that both groups were represented by one public accountant. This public accountant had a Power of Attorney from each of them, and the entire matter was handled by one district conferee and was later handled by one appellate conferee. The single settlement agreement related to all the parties, although, as is customary, separate Forms 870–AD were sent to each taxpayer. It was only after *all* Forms 870–AD were signed and returned by the taxpayers that the Commissioner signed them. In light of the entanglement of the parties and their deductions, there is no doubt that the Commissioner would not have settled with the taxpayers separately.

I therefore believe that the Whitneys are estopped from seeking a refund. The majority applies an estoppel test which courts have held inappropriate in circumstances similar if not identical to those here. The close relationship between the Whitneys, Bissettis and the partnership shows that a package deal was intended and the Whitneys benefited therefrom. The Commissioner relied on their representations in signing the Form 870–AD by allowing the statute of limitations to run on additional assessments against the related parties. The facts established in the record are sufficient to uphold the summary judgment granted by the district court.