**TEXAS COMMERCE BANK NATIONAL ASSOCIATION, Donald Baker, and William W. Bland, as Independent Co–Executors of the Estate of Grace E. McDaniel, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. H–91–1654.**

United States District Court, S.D. Texas, Houston Division.

Nov. 24, 1992.

Walter P. Zivley, Liddell, Sapp, Zivley, Hill & LaBoon, Houston, Tex., for plaintiffs.

Dinah L. Bundy, U.S. Dept. of Justice, Tax Div., Dallas, Tex., for defendant.

## ORDER

HITTNER, District Judge.

Pending before the Court is the motion for summary judgment (Document # 19) filed by plaintiffs Texas Commerce Bank National Association ("TCB"), Donald Baker ("Baker") and William W. Bland ("Bland"), (collectively "the Estate") as independent co-executors of the estate of Grace E. McDaniel ("Mrs. McDaniel"). Also pending before the Court is the cross-motion for summary judgment (Document # 22) filed by defendant the United States of America (the "government"). Having considered the motions, the submissions on file and the applicable law, the Court determines that the Estate's motion should be denied and the government's motion should be granted.

This is an action for the recovery of federal estate taxes assessed against the estate of Mrs. McDaniel. The Estate alleges that the government erroneously included within Mrs. McDaniel's gross estate the corpus of a testamentary trust (the "trust") created by the will of Mrs. McDaniel's husband, Daniel Boleman McDaniel ("Mr. McDaniel"). Mrs. McDaniel was named as both beneficiary and co-trustee of the trust. Plaintiff TCB was also named as co-trustee.

Upon Mrs. McDaniel's death in 1983, the government assessed the estate tax based on the inclusion of the corpus of the trust within the taxable estate, on the ground that Mrs. McDaniel possessed a general power of appointment over the trust. The Estate appealed the Estate Tax Examiner's assessment, arguing that no general power of appointment existed because the language of Mr. McDaniel's will created an ascertainable standard of distribution and Mrs. McDaniel's fiduciary duties as co-trustee restricted her ability to distribute the trust corpus to herself.

Eventually, a compromise was reached pursuant to which the government agreed to assess a tax based on the inclusion of only 75% of the corpus of the trust. In exchange for the 25% discount, the Estate agreed not to file any claims for a refund. The agreement was set forth in the Form 890–AD titled Estate Tax Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment ("890–AD").

Subsequent to the execution of the 890–AD and payment of the estate tax calculated according to the compromise, the Estate filed a Form 843 claim for a refund of the $1,202,771.07 it had paid in estate taxes. The Estate asserted that it had only then discovered that Mrs. McDaniel had suffered a stroke in 1982 which rendered her incompetent and, therefore, extinguished any general power of appointment she had over the trust. By letter dated February 19, 1991, the Internal Revenue Service (the "Service") disallowed the Estate's refund, and this action followed.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also State Farm Life Ins. Co. v. Guttermann,* 896 F.2d 116, 118 (5th Cir.1990).

In the instant case, there is no genuine issue as to any material fact concerning the issue of estoppel. The government would bear the burden of proof at trial to show that the Estate is estopped from asserting this refund claim. *Joyce v. Gentsch,* 141 F.2d 891, 896 (6th Cir.1944). Having reviewed the submissions on file, this Court finds that the government has sufficiently proven that it is entitled to judgment as a matter of law based on the principle of estoppel. Further, the Estate has failed to demonstrate any material fact issues rendering summary judgment inappropriate.

The Fifth Circuit has determined that " '[w]here a taxpayer receives and retains the benefits flowing to it from a compromise of its tax liability, the taxpayer after the statutory period for the collection of the tax has expired, is estopped from repudiating such part thereof as it contends to have been less favorable to it than the facts or law warranted.' " *Daugette v. Patterson,* 250 F.2d 753, 756 (5th Cir.1957) (*quoting* 9 Mertens, Law of Federal Income Taxation 472, 473, § 52.20), *cert. denied* 356 U.S. 902, 78 S.Ct. 561, 2 L.Ed.2d 580 (1958).

By signing the 890–AD compromise, the Estate received the benefit of having 25% of the corpus of the trust excluded from the taxable estate. If the Estate is unsuccessful in the instant lawsuit, it will still retain that benefit because the statute of limitations has run and the Government is foreclosed from seeking any further assessment on Mrs. McDaniel's estate. Thus, under *Daugette,* the newly discovered facts regarding Mrs. McDaniel's incompetency, which render the compromise less favorable to the Estate than it appeared at the time the compromise was executed, cannot be raised in this refund action as a basis for repudiating the compromise. If it were otherwise, the result to the government would be inequitable for if the government prevails in the refund action, it still cannot assess a deficiency based on inclusion of 100% of the trust corpus within the gross estate because the statute of limitations has expired. *See Hunt v. United States,* 175 F.Supp. 665 (E.D.Tex.1959).

The Estate argues that *Daugette* is not applicable to the instant dispute because the Estate's claim for a refund raises a new and different issue than that which was compromised by the 890–AD agreement. Specifically, the Estate asserts that the 890–AD compromised only the issue whether a general power of appointment was created by Mr. McDaniel's will; the issue *sub judice* is whether the general power of appointment was extinguished by reason of Mrs. McDaniel's incapacity. The government contends that the issue which was compromised and the issue now being asserted are identical, i.e., whether a general power of appointment existed at the time of Mrs. McDaniel's death.

The Court finds that whether a power of appointment was extinguished by Mrs. McDaniel's incompetency is simply a sub-issue of the primary dispute which was addressed by the 890–AD compromise, i.e., whether a power of appointment existed at Mrs. McDaniel's death so as to warrant inclusion of the trust corpus within her gross estate. Therefore, this issue should have been addressed during the compromise negotiations. At the time the 890–AD compromise was executed, at least one co-executor, Baker, was aware of the stroke leading to Mrs. McDaniel's incompetency. However, the Estate failed to raise the incompetency issue at that time. That omission cannot now serve as the basis of this refund action since the government

has changed its position in reliance on the finality of the compromise. *See Union Pac. R.R. Co. v. United States,* 847 F.2d 1567, 1571 (D.C.Cir.1988).

The Estate argues that the Service would have executed the same compromise even if the incompetency issue were addressed during negotiations. However, this does not mean that the Service would have executed the same compromise if the right to seek a refund based on the incompetency issue was reserved by the Estate. The Estate's agreement not to file a refund was unconditional; the right to seek a refund in the event of newly discovered facts affecting the existence of a general power of appointment was not reserved by the Estate. "[H]ad the [taxpayers] explicitly reserved the right to seek a refund ... the Commissioner [may] have been considerably less willing to forego his right to assess a full deficiency." *Stair v. United States,* 516 F.2d 560, 565 (2d Cir.1975).

Finally, although it is unclear under *Daugette* whether misrepresentation on the part of the taxpayer must be shown for estoppel to apply, "the statement that no refund claim would be filed—once the taxpayer has reneged—is misrepresentation of a kind sufficient to ground estoppel." *Stair,* 516 F.2d at 565. "For the misrepresentation in fact inheres in the failure to state—at the time the settlement is made— that the representation is only conditional, and that there are circumstances under which the promise [not to file a refund claim] may be revoked." *Id.*

Prior to the 890–AD compromise, at least one co-executor knew that Mrs. McDaniel suffered a stroke which caused her incompetency. The government would be adversely affected if the Estate were not estopped from bringing this refund claim, because it is precluded from assessing any further deficiency even if it were to prevail in a refund action. Since the government is so bound by its agreement, the Estate should be mutually bound. Therefore, the Estate is estopped from seeking a refund in contravention of its agreement not to do so in the 890–AD compromise. *Accord Elbo Coals, Inc. v. United States,* 763 F.2d 818

(6th Cir.1985); *Eisenbrandt v. Commissioner of Internal Revenue Service,* 622 F.Supp. 27 (N.D.Ill.1985); *Dupuy v. United States,* 598 F.Supp. 520 (W.D.Va.1984).

Based on the foregoing, it is

ORDERED that the Estate's motion for summary judgment (Document # 19) is DENIED, and the government's motion for summary judgment (Document # 22) is GRANTED.