**In re Daniel Paul KLEE and Deanna Marie Klee, Debtors.**

**Bankruptcy No. 396–32660–DDS13.**

United States Bankruptcy Court, D. Oregon.

Oct. 2, 1997.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW REGARDING CROSS
MOTIONS. FOR SUMMARY JUDG-
MENT (IRS CLAIM)

DONAL D. SULLIVAN, Bankruptcy
Judge.

The Internal Revenue Service ("IRS") filed a claim, since amended, in the total amount of $181,758.79. The IRS asserts priority status for $177,599.40 of this amount and general unsecured status for the remaining $4,159.39. The debtors object to the claim of the IRS in its entirety, challenging the validity of the assessment. The parties filed cross motions for summary judgment. I find that the assessment is invalid and sustain the debtors' objection. My reasons follow.

## I. BACKGROUND

The concise statement of facts filed by the IRS is undisputed. Beginning in 1984, the debtors became involved in a partnership known as Shorthorn Genetic Engineering 1984–2 ("SGE"). The IRS disallowed certain deductions and credits taken by the SGE partners. SGE, through its Tax Matters Partner, contested the disallowance in the United States Tax Court ("tax court litigation"). In or about June of 1995, while the tax court litigation was pending, debtor Daniel P. Klee ("Dr.Klee") contacted the IRS in Portland, Oregon, to discuss tax deficiencies which resulted from debtors' involvement in

SGE. Shortly thereafter, an IRS employee in Sacramento, California called the debtors at which time Dr. Klee and the IRS employee discussed settling the dispute regarding debtors' tax deficiencies attributable to the debtors' involvement in SGE. A second IRS employee in Sacramento called the debtors and informed the debtors that the IRS would send a settlement offer letter in a few days to which debtors would have a limited time to respond. The settlement offer letter dated June 29, 1995, was received by the debtors, and the offer was accepted by the debtors in writing on July 9, 1995. Following receipt of the debtors' acceptance, the IRS sent the debtors a Form 906 Closing Agreement ("closing agreement"). The debtors executed the closing agreement on August 10, 1995. On August 16, 1995, R.M. Spooner, Associate Chief of Appeals, executed the closing agreement on behalf of the IRS. Based upon the closing agreement, on January 8, 1996, the IRS made the assessment which forms the basis for its claim.

## II. DISCUSSION

The debtors raise two issues to challenge the validity of the assessment. First, the debtors contend that R.M. Spooner had no authority to execute the closing agreement, thus rendering the agreement void. Second, the debtors contend that the IRS misrepresented the settlement to the debtors, and that the misrepresentation was sufficient to invalidate the closing agreement under 26 U.S.C. § 7121.

1. The Closing Agreement is Void Because the Associate Chief of Appeals Had No Authority to Execute It.

"A closing agreement is a written agreement between an individual and the Commissioner which settles or 'closes' the liability of that individual with respect to any internal revenue tax for a taxable period. If the agreement is signed and accepted by the Commissioner or his delegate, the agreement is final and conclusive as to both the taxpayer and the IRS. 26 U.S.C. § 7121."

*Miller v. IRS (In re Miller)*, 174 B.R. 791 (9th Cir. BAP 1994), *aff'd* 81 F.3d 169 (9th Cir.1996).

■ The issue I must decide is whether R.M. Spooner, an Associate Chief of Appeals, had authority to act as the Commissioner's delegate under the facts of this case. Delegation Order No. 97 ("DO 97") relates to closing agreements. Paragraph 4 of DO 97 provides authority to Associate Chiefs of Appeals Offices to enter into and approve closing agreements. However, paragraph 4 of DO 97 contains the phrase "but excluding cases docketed before the United States Tax Court." In *Webb v. Commissioner*, T.C.M. (RIA) 94,549, 1994 WL 591945 (1994), *aff'd without published opinion*, 68 F.3d 482 (9th Cir.1995), the tax court agreed with the IRS that this language clearly means that those agents otherwise granted authority under paragraph 4 of DO 97 "lacked authority to enter into a closing agreement with respect to any matter pending before the Tax Court." *See also Stiskin v. Commissioner*, T.C.M. (RIA) 96,306, 1996 WL 377047 (1996) ("Since the case was already docketed in the Tax Court when the closing agreement was signed, the Associate Chief of Appeals here did not have authority to sign the closing agreement on behalf of the Commissioner.") *See generally MERTENS LAW OF FEDERAL INCOME TAXATION* § 52.17 (Callaghan & Company, 1990) (Cases arising out of and pertaining to cases where the Regional Counsel or Chief Counsel have jurisdiction may be signed only at the National Office level.) Thus, I find that R.M. Spooner did not have authority to enter the closing agreement. Because the dispositive language addresses "cases docketed before the United States Tax Court," I find irrelevant the Klees' status as nonparticipating partners. Tax Court Rule 247, and the statutes cited therein, clearly provide that they are parties to the action. Further, Tax Court Rule 248, which provides for settlement, including settlement with nonparticipating partners, cannot be read to expand the authority delegated in DO 97.

■ An agreement which has not been signed by the proper statutory authority binds neither the government nor the taxpayer. *John v. U.S.*, 138 F.Supp. 89 (E.D.Wis.1956). The IRS regulations establishing procedures for closing agreements

are exclusive. *Shumaker v. IRS*, 648 F.2d 1198 (9th Cir.1981). "An agreement entered into by an unauthorized act of an agent of the United States is null and void." *Stiskin, supra.* Thus, the IRS may not at its discretion ratify the closing agreement should it decide to enforce it. To hold otherwise would improperly allow the IRS to expand the scope of DO 97.

2. The IRS Did Not Make Material Misrepresentations in Connection with the Closing Agreement.

■ Debtors argue that the IRS misrepresented several material facts which should invalidate the closing agreement pursuant to 26 U.S.C. § 7121(b) if it is otherwise enforceable. First, the debtors contend that although the solicitation letter dated June 29, 1995, stated that only the years after 1986 would be considered, the closing agreement includes 1984, 1985 and 1986. Second, the debtors contend that the solicitation letter stated that interest would be calculated at "regular" rates, not at the rate applicable to tax-motivated transactions. While the closing agreement does provide for non-tax-motivated interest rates for years subsequent to 1986, for years 1986 and prior the tax-motivated interest was charged. Third, the solititation letter stated that debtors would be allowed deductions for cash paid to the SGE partnership. While paragraph C of the closing agreement recites that debtors paid in $43,887, the government only allowed deductions in the amount $21,525. Finally, the debtors contend that on three occasions, IRS employees said they would get the Klees out of the mess related to the partnership tax issues.

Although I am not required to reach these issues having found that the closing agreement was not properly executed, because the parties have presented these additional issues to me I proceed to decide them. I have reviewed the solicitation letter and the closing agreement and find them to be consistent.

First, the solicitation letter clearly sets out separate treatment for the years 1987 through 1990, and for the years prior to 1987. As to the years prior to 1987, the solicitation letter clearly stated that the settlement for

that period would be based on the "Hoyt Agreement" executed on May 20, 1993. The acceptance of the solicitation letter which debtors executed on July 9, 1997 states "I would like to settle my case on the basis of the out-of-pocket offer extended by the IRS on June 29, 1995 for taxable years after 1986." Because the IRS was clearly not "settling" the years prior to 1987 but was instead following the "Hoyt Agreement" for that period, this language is not inconsistent with either the solicitation letter or the closing agreement. Thus, I find no misrepresentation based upon the mere inclusion of years 1984–1986 in the closing agreement.

Second, the term indicating that the "regular" interest rate would apply was clearly related only to the settlement offer relating to years 1987 to 1990. Page one, paragraph two of the solicitation letter provides in relevant part:

"The terms of our offer to settle investor cases for all tax years after 1986 are as follows:...We will calculate interest at the 'regular' interest rates, not the rates prescribed for deficiencies resulting from tax motivated transactions."

Debtors do not argue that the May 20, 1993 "Hoyt Agreement" which was to govern the years prior to 1987 required application of the "regular" interest rate. I find no misrepresentation based upon the limitation of the "regular" interest to the years 1987 through 1990.

Third, paragraph C of the closing agreement identifies the amounts by taxable year that the debtors paid into the SGE partnership. Paragraphs 2 and 4 of the closing agreement are consistent with the formula set forth in the solicitation letter. At oral argument the government conceded that the amount stated in paragraph 4 reflects a computational error. I agree and find that the deduction which should have been allowed in paragraph 4 is $8,710. The debtors argue that they were in fact not allowed to deduct the cash paid in 1988 in the amount of $5,377 and in 1992 in the amount of $12,589 because those years were "closed." The government advised that the assessment was made based upon the allowance of those deduction. The

only evidence I have on this issue is Exhibit A to the Declaration of Joanne E. Duane, which is a copy of Form 4340, Certificate of Assessments and Payments. The Certificate of Assessments does not cover the year 1992, and I cannot discern whether the $5,377 deduction was allowed in 1988. Regardless, the closing agreement is binding even with respect to these deductions even if the debtors are otherwise unable to amend their returns. *See In re Miller* at 797, *citing Wolverine Petroleum v. Commissioner*, 75 F.2d 593, 596 (8th Cir.), *cert. denied*, 295 U.S. 743, 55 S.Ct. 656, 79 L.Ed. 1689 (1935).

 Finally, any assurances by the IRS employees that they would "take care of" the Klees were not reasonably relied upon by the Klees, particularly when no specific promises were made with respect to the Klees' ultimate tax obligation. In sum, I find no misrepresentation to provide the basis to set aside the closing agreement under 26 U.S.C. § 7121(b).

### III.   CONCLUSION

There having been no valid closing agreement upon which to assess taxes against the debtors, the debtors' objection to the assessment which constitutes the basis of the IRS' claim in this case is sustained.

The foregoing constitute my findings of fact and conclusions of law. I will enter a separate order consistent with the foregoing.

### ORDER DENYING IRS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEBTORS' CROSS MOTION

Based upon the findings of fact and conclusions of law filed contemporaneous herewith, it is

ORDERED that the United States' Motion for Summary Judgment is denied; it is further

ORDERED that the Debtors' Cross Motion for Summary Judgment is granted; it is further

ORDERED that the Debtors' objection to the claim of the Internal Revenue Service is sustained and the claim is disallowed.