**In re Duane C. OLCSVARY, Patricia C. Olcsvary, Debtors.**

**Duane C. Olcsvary and Patricia C. Olcsvary, Plaintiffs,**

**v.**

**United States of America Internal Revenue Service, Defendant.**

**In re Larry Dean Crowell, Mary Susan Crowell, Debtors.**

**Larry Dean Crowell and Mary Susan Crowell, Plaintiffs,**

**v.**

**United States of America Internal Revenue Service, Defendant.**

**Bankruptcy Nos. 96–14646, 96–14256. Adversary Nos. 98–1160, 98–1161.**

United States Bankruptcy Court, E.D. Tennessee, Southern Division.

Sept. 21, 1999.

Kyle R. Weems, Chattanooga, TN, for Debtors.

Jason S. Zarin, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for United States.

## MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

These consolidated adversary proceedings are before the court on motion for summary judgment filed by the defendant, the Internal Revenue Service of the United States of America ("IRS"). The plaintiffs in these actions are the debtors, Duane and Patricia Olcsvary and Larry and Mary Crowell, all of whom have chapter 13 cases pending in this court. They have brought these actions against the IRS in order to defeat certain tax claims filed against them.

The issues before the court on this motion for summary judgment are (1) whether W.J. Hoyt III, as the tax matters partner for certain tax shelter partnerships in which the plaintiffs were partners, extended the statute of limitations for assessments as to those partnerships when he executed various IRS Forms 872, and (2) whether certain Form 906 Closing Agreements executed by R.M. Spooner, Associate Chief of Appeals for the Internal Revenue Service, are valid and binding on the plaintiffs. For the reasons that follow, the court will grant IRS' motion for summary judgment on the question of the validity of Hoyt's extensions of the relevant statutes of limitation, but deny it as to the closing agreements and their effect.

### I.

The facts are relatively straightforward. W.J. Hoyt III was the tax matters partner authorized by certain partnerships to conduct their business with the IRS. Pursuant to this authority, he entered into Form 872 agreements with the IRS in 1991, 1992, and 1993, which extended the time in which IRS could make assessments against the partnerships and thus the plaintiffs, who were Hoyt's partners at the time.

Hoyt was under active criminal investigation for tax fraud from April 23, 1984, through July 31, 1986, and from August 12, 1987, through November 19, 1991. No tax charges against Hoyt resulted from this investigation. In 1999, Hoyt was indicted in the United States District Court for the District of Oregon, where he was charged with conspiracy to defraud investors through the use of tax shelter partnerships of the kind the plaintiffs joined. This indictment includes numerous counts of bankruptcy fraud and mail fraud, but it contains no tax counts. There is no evidence in the record as to whether the tax investigation that terminated in 1991

played any role in the bringing of the 1999 indictment.

Plaintiffs contend that Hoyt's extensions of the statutes of limitation are invalid because, at the time he executed the appropriate IRS Forms 872, he had a conflict of interest that automatically disqualified him to act as the tax matters partner. If they are correct, then certain limitations periods have run against the IRS and some of its claims against them are therefore invalid. This contention springs from a recent Second Circuit case, *Transpac Drilling Venture v. Commissioner*, 147 F.3d 221 (2d Cir.1998), wherein the court held "that where serious conflicts exist, a [tax matter partner] may be barred from acting on behalf of the partnership, quite apart from the issuance of a government letter under current Regulation 301.6231(c)–5T." *Id.* at 227. The facts that led to this conclusion by the Second Circuit were that the tax matters partners initially executed extensions of the statutes of limitation at a time when they had been called before a grand jury, but had not become targets. They continued, however, their practice of granting these extensions to IRS throughout the ensuing period of several years during which time they became targets of the investigation, agreed to cooperate in exchange for immunity, and in one case agreed to cooperate pursuant to a plea agreement for a suspended sentence. The Second Circuit concluded that the tax matters partners had "a powerful incentive to ingratiate themselves to the government—be it the civil department of the IRS, the criminal division, or even the United States Attorney's Office...," *id.*, and concluded that "the criminal investigation created an overwhelming pressure on the [tax matters partners] to ignore their fiduciary duties to the limited partners." *Id.* This pressure and conflict of interest "resulted in a partnership that ... had *no* [tax matters partners]." *Id.* at 228.

Assuming for the sake of argument that our circuit would follow *Transpac*, several divergences of fact prevent these proceedings from reaching the same legal destination as *Transpac* did. The tax matters partners who entered into extension agreements with the IRS in *Transpac* were considered to have done so as the result of a grand jury investigation that had closed in on them and forced them to buy the prosecution's leniency with their cooperation, which included repeated extensions. Those factors are not present in the case at bar. It is true that during one year, 1991, Hoyt extended the statute of limitations with respect to certain partnerships while he was under criminal investigation for tax fraud. But it is not clear whether this tax investigation involved the use of a grand jury or not, nor is there any evidence that Hoyt cooperated with the investigation or even knew about it. There is no evidence that Hoyt had any contact with the investigators at all, much less that he executed the extensions under pressure or for leniency. Indeed, since these tax investigations never resulted in prosecution, it is possible that Hoyt viewed them with contempt or haughty disdain rather than fear. The indictment brought against him in 1999 certainly involves his activities in connection with these partnerships, but since it contains no tax charges the idea that Hoyt was overwhelmed by the *tax* investigation that ended in 1991 seems entirely speculative if not improbable.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party carries the burden of showing that no genuine issue of material fact exists. In the face of a summary judgment motion, however, the nonmoving party cannot rest on its pleadings, but must come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "By its very terms, this standard provides that the 'mere existence of *some* alleged factual dis-

pute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The dispute must be genuine, and the facts must be such that, if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). If the disputed evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

██ If it be assumed for the sake of argument that the Sixth Circuit might follow *Transpac*, it nevertheless appears, as IRS points out, that the plaintiffs have produced no evidence such as would permit a reasonable fact finder to conclude that Hoyt was pressured to abandon the interests of his partners in this affair. The court in *Transpac* did not assume that the mere existence of an investigation would subvert a tax matters partner's judgment and bend him to the government's will in dereliction of his fiduciary duties to his partners. Instead, the Second Circuit pointed to the brewing investigation, the grand jury summonses, the immunity agreements, and the plea bargain for a suspended sentence. In the proceeding at bar, however, the plaintiffs point only to an old investigation that apparently bore no fruit, and on that basis alone [1] they ask this court to infer that Hoyt was swept away into conflict. The court is unwilling to draw that inference without more. Unlike the situation in *Transpac*, this proceeding contains no evidence that Hoyt cooperated in any way at all with the government investigation that was focused on him. Apparently, he has not sought

immunity, or plea bargained, or turned against his confederates. *Transpac* does not stand for the proposition that the mere existence of any investigation automatically disqualifies a tax matters partner because of a conflict of interest. But that is all the plaintiffs in this proceeding have shown—that there had been an investigation of some kind with effects unknown. Without something more, the court will not infer the abandonment of fiduciary duties by a tax matters partner. Accordingly, the court will grant summary judgment on this issue in favor of the defendant and hold that Hoyt was indeed the tax matters partner at all relevant times herein and that his extensions of the statutes of limitation were valid.

## II.

The IRS also moves for summary judgment on the question of the validity and enforceability of the closing agreements it entered into with the plaintiffs themselves. The undisputed facts are that the IRS and the plaintiffs entered into Form 906 Closing Agreements, in the case of the Crowells for the years 1990 through 1996, and in the case of the Olcsvarys for the years 1985 through 1995. Mr. R.M. Spooner, Associate Chief of Appeals, signed all of these agreements on behalf of the IRS under the authority of Delegation Order No. 97, which grants an associate chief of appeals the authority to sign closing agreements on behalf of the IRS, but only concerning tax years in which a partnership does not have an issue docketed before the Tax Court. It turns out that for about one-half the years covered by the closing agreements signed by Spooner, the plaintiffs did in fact have cases pending in the Tax Court. All agree that Spooner therefore lacked authority to enter into closing agreements respecting the tax years for which cases were pending in the Tax Court. The issue is whether those closing

---

1. This court has gleaned the record and found in it only an unsworn, unsigned, incomplete letter from someone at Cobb and Woodworth, Attorneys, to a Mr. Oveson of the IRS. This letter makes conclusory allegations of conflict of interest on Hoyt's part, but it is entirely incompetent as evidence under Rule 56.

agreements are nevertheless binding on the plaintiffs, who would prefer to undo them and have their tax liabilities recomputed.

Plaintiffs contend that Spooner's lack of authority renders the closing agreements void such that neither the IRS nor the plaintiffs are bound thereby. This has been the law at least since 1929 when the Supreme Court decided *Botany Worsted Mills v. United States*, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929). In *Botany*, the Supreme Court directly held that a closing agreement entered into by an unauthorized IRS officer "did not constitute a settlement which in itself was binding upon the Government or the Mills." *Id.* at 289, 49 S.Ct. 129. The Court, however, reserved the issue of whether such an invalid agreement might become binding through the operation of estoppel.

> And, without determining whether such an agreement, though not binding in itself, may when executed become, under some circumstances, binding on the parties by estoppel, it suffices to say that here the findings disclosed no adequate grounds for any claim of estoppel by the United States.

*Id.* at 289, 49 S.Ct. 129. Since *Botany*, other courts have echoed the ruling that unauthorized closing agreements are invalid or void, *In re Klee*, 216 B.R. 42, 44–45 (Bankr.D.Or.1997) (collecting cases), but no court has decided the estoppel question reserved in *Botany*, that is, whether the United States can estop a private party to deny the validity of a void agreement.

The IRS argues that estoppel does apply in this situation, and it offers as authority several cases in which courts have applied estoppel against taxpayers who tried to disavow "settlement agreements" they made with the IRS, those agreements be-

ing of a lower order and formality than the closing agreements at issue in this case. The best example of these cases is *Elbo Coals, Inc. v. United States*, 763 F.2d 818 (6th Cir.1985), in which the Sixth Circuit, relying heavily on *Stair v. United States*, 516 F.2d 560 (2d Cir.1975), held that an informal agreement between the IRS and a taxpayer on Form 870–AD estopped the taxpayer from claiming a tax refund where (a) the taxpayer had promised not to seek a refund and (b) the IRS had allowed a statute of limitations to run against itself in reliance on the taxpayer's promise. The facts in *Stair*, upon which the Sixth Circuit relied, are almost identical and the outcome is the same.

Two features of these cases, however, distinguish them from the case under consideration. First, the courts that applied estoppel did so because the IRS had relied on specific taxpayer promises not to seek refunds. Second, IRS suffered irremediable detriment when it let statutes of limitation run against itself with respect to the tax years covered by the informal agreements.

■ In asking this court to apply *Elbo* and its estoppel principles to a case involving a formal closing agreement, IRS is asking this court to decide the very question reserved by the Supreme Court in *Botany*. Resolution of the issue will not be necessary at this time, however, for, even assuming that the IRS may use estoppel against the plaintiffs to enforce an otherwise void contract, the IRS has not succeeded in demonstrating all the necessary elements of estoppel are present in this case. Those elements are set out by the Supreme Court in *Heckler v. Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), as follows:

Estoppel is an equitable doctrine invoked to avoid injustice in particular cases. While a hallmark of the doctrine is its flexible application, certain principles are tolerably clear:

> "If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act ... the first person is not entitled
> ...
> "(b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired." Restatement (Second) of Torts § 894(1)(1979).

*Id.* at 59, 104 S.Ct. 2218. In *Heckler*, the Court examined the facts of the case and concluded that respondent, a health care provider, could not raise an estoppel because it had not shown a truly detrimental change in its position. The respondent had received certain payments under the provisions of a Comprehensive Employment and Training Act grant, which it spent in expanding its community services. When the government demanded repayment of these funds because they were improperly paid out in the first place, the respondent defended on the theory of estoppel.

In analyzing respondent's estoppel argument, the Supreme Court acknowledged that various hardships would ensue to the respondent, and perhaps its community, if a repayment were ordered. "There is no doubt that respondent will be adversely affected by the Government's recoupment of the funds that it has already spent. It will surely have to curtail its operations and may even be forced to seek relief from its debts through bankruptcy." *Id.* at 62, 104 S.Ct. 2218. Despite these very "adverse affects," the Court held that respondent's estoppel argument could not prevail because the respondent could not prove it would be "significantly worse off than if it had never obtained the CETA funds in question." *Id.* at 63, 104 S.Ct. 2218.

> In this case the consequences of the Government's misconduct were not entirely adverse. Respondent did receive an immediate benefit as a result of the double reimbursement. Its detriment is the inability to retain money that it *should never have received in the first place.* Thus, this is not a case in which the respondent has *lost* any legal right, either vested or contingent, or suffered any adverse change in its status. When a private party is deprived of something to which it was *entitled of right,* it has surely suffered a detrimental change in its position. Here respondent lost no rights but merely was induced to do something which could be corrected at a later time.

*Id.* at 61–62, 104 S.Ct. 2218 (emphasis added) (footnotes omitted).

■ Thus the Court, in its analysis of detriments as elements within the estoppel doctrine, seemed to distinguish between (a) situations in which a party might suffer financial hardship, even bankruptcy, as a result of being required to give up and restore that to which it was never legally entitled and (b) situations in which a party has suffered because it lost rights or property to which it was legally entitled. The first situation does not present a detriment such as will support estoppel.

■ It is questionable in this case whether the IRS has lost anything to which it was entitled of right, since in legal contemplation it never entered into the closing agreement with plaintiffs: only an unauthorized agent did. IRS cannot claim to enjoy, or to have lost, any contract rights flowing from the very kind of agreement the Supreme Court has declared to be nonbinding on either party. IRS had no rights.

Moreover, IRS, the proponent of this motion for summary judgment, has failed

to demonstrate the absence of any genuine issue of fact regarding its detrimental reliance on the plaintiffs' activities, which include entering a void agreement, failing to detect that fact, and taking subsequent actions in actual ignorance of that fact. Unlike the factual situations in the cases relied upon by IRS, the situation in this case is that no statute of limitations has run against IRS and it has not "lost any legal right" or "suffered any adverse change in its status." *Id.* at 61–62, 104 S.Ct. 2218. Indeed, if IRS's brief is to be credited, the IRS may have improved its position because, should the closing agreements be ineffectual, the IRS could amend its claim and "the hypothetical amended claim would be higher than the present proof of claim because it would not include the benefit and deductions provided in the Closing Agreements and would reapply all the penalties which the Service had previously waived." IRS Memorandum in Support of Motion for Summary Judgment at 24.

In summary, if the closing agreements in this proceeding were invalid when they were made and were not binding on either party, as the United States Supreme Court held in *Botany*, it is difficult to see how the IRS has been deprived of anything it was entitled to of right: it had no contract right. Since the subsequent course of conduct between the parties has not resulted in the loss of any legal rights by the IRS or caused any irremediably adverse change in its status, the court must conclude that a genuine issue remains in this proceeding as to whether the IRS can prove the kind of lasting detriment that the Supreme Court spoke of in *Heckler*.[2] Because the IRS bears the burden of demonstrating a detrimental change in position and has failed to do so, granting it summary judgment on its defense of estoppel is inappropriate.

**III.**

For the foregoing reasons, the court will grant IRS's motion for summary judgment on the issue of the tax matters partner's supposed conflict of interest. As there is no competent evidence of any such conflict of interest, the extensions of the statutes of limitation will be deemed valid. On the other hand, the court will deny IRS's motion for summary judgment insofar as it proposes to hold the plaintiffs bound by estoppel to the closing agreements executed by R.M. Spooner without proper authority. An appropriate order will enter.

2. There may also be a question whether IRS can prove any misrepresentation by the plaintiffs. The contracts in question were void ab initio, and the IRS is charged with knowledge of the fact because it is charged with knowledge of its own regulations.