T.C. Memo. 2001-85


UNITED STATES TAX COURT



MADISON RECYCLING ASSOCIATES,
DAVID A. BELDON, ROBERT T. BOYD, DOUGLAS C. BRANDON,
STEWART PIERCE BROWN, LLOYD E. BUSCH, DAVID J. D'ANTONI,
JOHN H. DELANEY, JR., DANIEL C. GREER, GERALD O.
HENDERSON, CHARLES D. HOERTZ, ESTATE OF JOSEPH KESSEL,
THOMAS P. KOREHLE, JOSIAH O. LOW, III, ROBERT J.
RIPSTON, HOWARD S. SIEVER, LAVONNE F. SIEVER, JAMES W.
SIMPSON, JR., R. BARRY UBER, LILLIAN D. WILLIAMS, PARTNERS
OTHER THAN THE TAX MATTERS PARTNER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 10601-88.                      Filed April 9, 2001.



<u>Gillard B. Johnson III</u>, for petitioners.

<u>John R. Mikalchus</u> and <u>Maureen T. O'Brien</u>, for respondent.



MEMORANDUM FINDINGS OF FACT AND OPINION


GERBER, <u>Judge</u>:  This case was assigned to Special Trial

Judge Lewis R. Carluzzo pursuant to section 7443A(b)(5) and Rules

180, 181, and 183.[1]  The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

CARLUZZO, <u>Special Trial Judge</u>:  On December 24, 1987, respondent issued a Notice of Final Partnership Administrative Adjustment (FPAA) to Madison Recycling Associates (Madison) for the year 1982.  The issue to be decided is whether the period of limitations for assessing any income tax attributable to any partnership item (or affected item) for Madison's 1982 taxable year expired prior to the issuance of the FPAA.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Madison's principal place of business was in New York, New York, when the petition was filed in this case.

Madison's 1982 Form 1065, U.S. Partnership Return of Income, (the information return) was filed with the Internal Revenue Service at the Brookhaven Service Center, Holtsville, New York, on March 14, 1983.  The return was prepared by H. W. Freedman & Co. and signed by Richard Roberts (Roberts), who at the time was Madison's tax matters partner (TMP) and general partner. At the time that Madison's 1982 return was prepared and filed, Harris W. Freedman (Freedman) and Shaye Jacobson (Jacobson) were

---

[1] Section references are to the Internal Revenue Code of 1986, as amended and in effect during the relevant periods.  Rule references are to the Tax Court Rules of Practice and Procedure.

certified public accountants licensed to practice in New York, and partners in H. W. Freedman & Co. In June 1984, Jacobson purchased Freedman's interest in H. W. Freedman & Co.

In 1983, the IRS determined that Roberts had violated section 6700 by promoting and selling limited partnership interests in plastics recycling partnerships (the partnerships). Pursuant to section 7408, on August 8, 1983, the United States filed a civil complaint in the U.S. District Court for the District of Massachusetts seeking an injunction against Roberts and other promoters of the partnerships. On the same day, in accordance with a consent agreement signed by Roberts on August 4, 1983, the court issued a permanent injunction against Roberts and other promoters to prevent them from further organizing, promoting, or selling abusive tax shelters. See Announcement of Injunctions Under Section 7408 of the Code, 1985-1 C.B. 671. Roberts moved to Paris, France, sometime during 1984; apparently he has continued to live there ever since. In January 1985, respondent assessed a section 6700 civil penalty of $205,000 against Roberts for his role in the promotion of the partnerships.

The examination of Madison's 1982 tax year began sometime in 1984. On April 2, 1984, Roberts, Freedman, and Jacobson signed a Form 2848, Power of Attorney and Declaration of Representative,

in which Roberts appointed Freedman and Jacobson as his attorneys-in-fact in connection with that examination.

Jacobson, as attorney-in-fact for Roberts, signed two Forms 872-P, Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership. The first, signed by him on November 5, 1985, extended the period of limitations for assessments related to Madison's 1982 tax year to June 30, 1987. The second, signed by him on August 6, 1986, extended the period to December 31, 1987.

Sometime between August and October of 1985, while the examination of Madison's 1982 tax year was in process, respondent initiated a criminal tax investigation of Roberts. The special agent assigned to conduct the criminal investigation did not contact Roberts, who was then in France, during the criminal investigation. On December 9, 1986, the criminal investigation of Roberts was discontinued without a recommendation that Roberts be prosecuted for any tax-related crimes.

## OPINION

Madison is a partnership subject to the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648, and therefore the treatment of partnership items is determined at the partnership level. The parties now are in agreement with respect to the adjustments made

in the FPAA,[2] but disagree as to whether the FPAA was timely.

In general, the period for assessing any income tax attributable to any partnership item (or affected item) for a partnership taxable year will not expire before the date which is 3 years after the later of:  (1) The date on which the partnership files its information return for the taxable year in question, or (2) the last day for filing such return for such year (without extensions).  See sec. 6229(a).  The period may be extended if the partnership's TMP, "or any other person authorized by the partnership in writing to enter into such an agreement", enters into a timely extension agreement with the Internal Revenue Service.  Sec. 6229(b)(1)(B).

In this case, Madison's 1982 information return was filed on March 14, 1983.  With respect to that return, the 3-year period for "assessing any * * * [income tax] with respect to any person which is attributable to any partnership item (or affected item)" expired on April 15, 1986.  Sec. 6229(a); see sec. 1.6031-1(e)(2), Income Tax Regs.  Taken in sequence, the two Forms 872-P (the consents) signed by Jacobson, as attorney-in-fact for Roberts, extended until December 31, 1987, the period of limitations for making assessments attributable to Madison's 1982

---

[2] The adjustments in this case arise from transactions similar to those discussed in Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion 996 F.2d 1216 (6th Cir. 1993).

tax year.  If the consents are valid, the FPAA is timely and the period of limitations for making assessments attributable to Madison's 1982 tax year remains in suspense pursuant to section 6229(d); if the consents are not valid, the period of limitations for making assessments attributable to Madison's 1982 tax year expired before the FPAA was issued.

Petitioners, relying upon Transpac Drilling Venture 1982-12 v. Commissioner, 147 F.3d 221 (2d Cir. 1998), revg. and remanding Transpac Drilling Venture 1982-16 v. Commissioner, T.C. Memo. 1994-26, argue that the consents are invalid.  Petitioners point out that Roberts had previously been the subject of section 6700 sanctions and was under criminal investigation at the time that the consents were signed.  According to petitioners, a conflict of interest legally removed Roberts' authority to act, personally or through his attorney-in-fact, on behalf of Madison.[3]

In Transpac Drilling Venture 1982-12, the IRS began a civil examination of the Transpac partnerships in the latter part of 1983.  In November 1985, a criminal referral was made. The promoter and the tax matters partners of the Transpac partnerships were the targets in the ensuing criminal tax investigation.  Sometime during the course of the criminal

---

[3] Petitioners also argue that the power of attorney did not give Jacobson the authority to extend the period of limitations for Madison's 1982 taxable year.  We have previously considered and rejected that argument in Madison Recycling Associates v. Commissioner, T.C. Memo. 1992-605.

investigation, the tax matters partners became cooperating Government witnesses in the investigation of the promoter, a convicted tax felon.  In exchange for their cooperation, the tax matters partners were granted immunity from prosecution or offered suspended sentences.  While the criminal investigation was proceeding, the IRS pursued a civil examination of the Transpac partnerships.  Because the statute of limitations applicable to the civil examination was about to expire, the IRS solicited consents from the limited partners but most refused. The IRS then approached the tax matters partners--who at this point were targets of the ongoing criminal investigation--and solicited and received consents from them on behalf of the Transpac partnerships.  See id. at 223.

In Transpac Drilling Venture 1982-12, the Court of Appeals for the Second Circuit found that the tax matters partners who signed the consents had "a powerful incentive to ingratiate themselves to the government" since their grants of immunity or sentencing agreements depended upon their cooperation with the Government.  Id. at 227.  The Court of Appeals further found that "the criminal investigation created an overwhelming pressure on the TMPs to ignore their fiduciary duties to the limited partners" and determined that if "serious conflicts exist, a TMP may be barred from acting on behalf of the partnership".  Id.

The facts of <u>Transpac Drilling Venture 1982-12</u>, are distinguishable from the facts of this case.  Unlike the tax matters partners in <u>Transpac Drilling Venture 1982-12</u>, nothing here suggests that the consents were agreed to because Roberts, acting personally or through his attorney-in-fact, had a powerful incentive to ingratiate himself with the Government.  Nothing suggests that Roberts was a prospective Government witness against other promoters of plastics recycling partnerships; nothing suggests that the consents were agreed to in return for some grant of immunity or sentencing agreements that depended upon Roberts' cooperation with the Government.  Indeed, there is no evidence that Roberts (or his attorney-in-fact) was aware of the criminal tax investigation at the time the consents were signed.  Unless he was aware of the existence of the criminal investigation against him, we fail to see how Roberts, acting personally or through his attorney-in-fact, could have been influenced by personal concerns in a such a way that he could not properly discharge his fiduciary duties to the limited partners of Madison.  See <u>Agri-Cal Venture Associates v. Commissioner</u>, T.C. Memo. 2000-271.

We also disagree with petitioners' suggestion that the section 6700 proceedings resulted in a conflict of interest; those proceedings had been completed, and the section 6700 sanctions were imposed prior to the time that the consents were

executed by Jacobson.  See <u>Phillips v. Commissioner</u>, 114 T.C. 115, 132 (2000).

The "'mere existence of an investigation'" targeting the tax matters partner does not, in and of itself, "'subvert a tax matters partner's judgment and bend him to the government's will in dereliction of his fiduciary duties to his partners.'" <u>Phillips v. Commissioner</u>, <u>supra</u> at 132 (quoting <u>Olcsvary v. United States</u>, 240 Bankr. 264, 266-267 (E.D. Tenn. 1999)); see also <u>Agri-Cal Venture Associates v. Commissioner</u>, <u>supra</u>. Consequently, without more, we reject petitioners' contention that the completed section 6700 proceedings or the criminal tax investigation targeting Roberts caused him to lose his authority to act on behalf of Madison due to a conflict of interest.  It follows that the consents are not rendered invalid on that ground.  Because the FPAA was issued within the period contemplated by the consents, the FPAA was timely, and we so hold.

To reflect the foregoing and the agreement of the parties with respect to the adjustments made in the FPAA,

<u>Decision will be entered</u>

<u>under Rule 155</u>.