**In the Matter of Elvin L. MARTINEZ, Debtor.**

**Elvin L. Martinez, Plaintiff,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 02–15472A.**
**Adversary No. 03–1232.**

United States Bankruptcy Court,
E.D. Louisiana.

Feb. 9, 2005.

Elvin L. Martinez, Luling, LA, Eric J. Derbes, The Derbes Law Firm, LLC, Metairie, LA, Bruce A. Miller, Lead Attorney, Metairie, LA, for Debtor.

Michael Chiasson, Metairie, LA, trustee.

## MEMORANDUM OPINION

JERRY A. BROWN, Chief Judge.

This matter came before the court on a motion for summary judgment filed by the defendant, the United States of America. The plaintiff/debtor, Elvin L. Martinez filed a cross-motion for summary judgment. The motions were submitted to the court on briefs on November 17, 2004, at which time the court took the matter under advisement.[1]

### I. Factual background

Through the underlying complaint Mr. Martinez essentially seeks to have the court determine that the taxes assessed by the United States for the tax years of 1987 through 1995 were discharged in bankruptcy.

The taxes in question stem from several partnerships in which the debtor was involved:[2]

| Partnership Name | Tax Years |
| --- | --- |
| Durham Genetic Engineering ("DGE") 1985–3 J.V. | 1985–1993 |
| DGE 1985–5, JV | 1987–1993 |
| Timeshare Breeding Service ("TBS") 1987–2, JV | 1987–1994 |
| TBS JV | 1987–1989 [3] |

Mr. Martinez filed a petition for relief under Chapter 7 of the United States

1. Pursuant to Federal Rule of Civil Procedure 63, which is made applicable to this proceeding by Bankruptcy Rule 9028, this matter is now before Judge Jerry A. Brown. The court certifies that the presiding judge before whom the hearing was held is dead and, therefore, is unable to proceed, that the present judge is familiar with the record, and that the proceeding in this matter may be completed without prejudice to the parties.

2. The bankruptcy cases for these and other partnerships involving Walter J. Hoyt, III were substantively consolidated by the U.S. Bankruptcy Court for the District of Oregon. Pleading 68, Exhibit 1.

3. Pleading 49, Exhibit of Jill Page

Bankruptcy Code on August 8, 2002.[4]

He was granted a discharge by this court on November 4, 2002, and the case was closed.

On October 3, 2003, the court granted Mr. Martinez's *ex parte* motion to reopen his bankruptcy case, and he filed this adversary proceeding.

## II. *Analysis*

Summary judgment is proper when no issue of material fact exists and the moving party is entitled to a judgment as a matter of law.[5] All factual questions are viewed in the light most favorable to the party opposing summary judgment.[6]

In its motion for summary judgment, the United States contends that Mr. Martinez's federal tax liabilities for 1987 through 1993 were not discharged.

A discharge under chapter 7 does not discharge a debtor from a tax debt of the kind that is specified in 11 U.S.C. § 507(a)(8)(A),[7] which includes the following unsecured tax claims:

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after

such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;[8]

The parties disagree on the interpretation of Section 507(a)(8)(A)(iii). Mr. Martinez contends that the taxes were discharged because they were assessable before the petition date. He believes that "if a tax is assessable before a bankruptcy is filed, even if it is not yet assessed, the tax is discharged."[9] He believes that the discharge of a tax is precluded under that section only if the tax "is neither assessed nor assessable prior to filing."

On the other hand, the United States contends that the section precludes discharge if the tax was assessable, though not assessed, before the petition date.

■ The court finds that Section 507(a)(8)(A)(iii) refers to taxes "which are *still* assessable after the commencement of the case."[10] Usual examples include "audit-risk tax claims or taxes for which a tax court case is pending at the time of the bankruptcy filing."[11] Therefore, the court agrees with the United States' interpretation of the section. A tax that is assessable, but not assessed, before the bankruptcy petition is filed will not be discharged.

4. Case no. 02–15471

5. *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1079 (5th Cir.1995); Bankruptcy Rule 7056(c).

6. *Id.* at 1079; *Hightower v. Texas Hospital Ass'n.*, 65 F.3d 443, 447 (5th Cir.1995).

7. 11 U.S.C. § 523(a)(1)(A)

8. 11 U.S.C. § 507(a)(8)

9. Pleading 64, p. 3 fn. 1

10. McQueen, Richard and Williams, Jack F., *Tax Aspects of Bankruptcy Law and Practice*, § 8:15 "Still Assessable Rule," 3rd ed., Nov. 2004. (emphasis added)

11. *Id.*

### A. *Taxes for 1987 through 1989*

■ Generally, a tax must be assessed within three years after the tax return is filed.[12] There is a special rule, however, for partnerships:

[T]he period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of—

(1) the date on which the partnership return for such taxable year was filed, or

(2) the last day for filing such return for such year (determined without regard to extensions).[13]

The United States contends that the tax matters partner for the partnerships in which Mr. Martinez was involved, agreed to extend the period in which the United States could assess the taxes for 1987, 1988, and 1989. Mr. Martinez contends that the agreements are invalid.

Walter J. Hoyt, III was the tax matters partner for the partnerships in which Mr. Martinez was involved. The designated tax matters partner can extend the period for tax assessment with respect to all partners.[14]

For DGE 85–3 J.V., Mr. Hoyt extended the period for assessment of the 1987, 1988, and 1989 taxes through December 31, 1993.[15]

For DGE 85–5, JV, Mr. Hoyt extended the period for assessment of the 1987, 1988, and 1989 taxes through December 31, 1993.[16]

For TBS 1987–2, JV, Mr. Hoyt extended the period for assessment of the 1987, 1988, and 1989 taxes through December 31, 1993.[17]

For TBS JV, Mr. Hoyt extended the period for assessment of the 1987, 1988, and 1989 taxes through December 31, 1993.[18]

Mr. Martinez claims that the extensions authorized by Mr. Hoyt were invalid because Mr. Hoyt was under criminal investigation and should have been removed as tax matters partner by the IRS.

The United States has admitted that Mr. Hoyt was investigated by the IRS's Criminal Investigation Division ("CID") both before and after Mr. Hoyt authorized the extensions.[19] However, the investigation was closed at the time Mr. Hoyt authorized the extensions.[20]

The designation of a tax matters partner remains effective until the partnership items of the tax matters partner become nonpartnership items under 26 U.S.C. sec. 6231(c). Treas.Reg. sec. 301.6231(a)(7)–1(1)(4). Any actions taken by the tax matters partner prior to the effective date of termination of the designation of partner as the tax matters partner remain valid. *Id.* at 301.6231(a)(7)–1(1)(5).

Finally, with respect to the criminal investigation of the tax matters partner, Treas.Reg. sec. 301.6231(c)–5T provides that, [t]he treatment of items as part-

---

12.  26 U.S.C. § 6501(a).

13.  26 U.S.C. § 6229(a)

14.  26 U.S.C. § 6229(b)(1)(B)

15.  Pleading 49, Exhibits AK, AV, and BJ

16.  Pleading 49, Exhibits AO and AZ

17.  Pleading 49, Exhibits AR, BC, and BP

18.  Pleading 49, Exhibit BG

19.  Pleading 49, p. 10 and 11

20.  Pleading 49, p. 12

nership items with respect to a partner under criminal investigation for violation of the internal revenue laws relating to income tax will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner ... shall be treated as nonpartnership items as of the date on which the partner is notified that he or she is the subject of a criminal investigation *and receives written notification from the Service that his or her partnership items shall be treated as nonpartnership items. The partnership items of a partner who is notified that he or she is the subject of a criminal investigation shall not be treated as nonpartnership items under this section unless and until such partner receives written notification from the Service of such treatment.* (emphasis added).

The written notification by the I.R.S. that partnership items are to be treated as nonpartnership items in the context of a criminal investigation is a crucial element. *Chef's Choice Produce Ltd. v. Commissioner of Internal Revenue,* 95 T.C. 388, 1990 WL 143256 (1990).[21]

Mr. Martinez has neither alleged nor presented any evidence to show that Mr. Hoyt received written notification that his partnership items would be treated as nonpartnership items. Also, several other courts have decided this same issue in cases brought by other of Mr. Hoyt's partners—whether Mr. Hoyt had authority as tax matters partner to grant the exten-

sions, and the courts have responded affirmatively.[22]

Mr. Martinez relies on *Transpac Drilling Venture 1982–12 v. Comm'r*[23] for the proposition that Mr. Hoyt's extensions were invalid due to a conflict of interest between him and his partners as a result of the criminal investigation of Mr. Hoyt and of his fiduciary duty to his partners. Although *Transpac* is quite clear that serious conflicts of interest can preclude a tax matters partner from acting on behalf of the partnership, even if the IRS has not sent the tax matters partner written notification pursuant to Treas.Reg. sec. 301.6231(c)–5T, *Transpac* is distinguishable from Mr. Martinez's case.

In *Transpac,* the IRS first asked the other partners to grant extensions individually, and they refused. Then, the IRS asked the tax matters partners, who were being called to appear and produce documents in front of a grand jury, to grant extensions. The tax matters partners complied because of "a powerful incentive to ingratiate themselves to the government."[24] Also, the court focused on the fact that the IRS knew that the other partners would not have granted the extensions.

Mr. Martinez's case is distinguishable in that he neither alleges nor proves that the IRS asked him or the other partners for extensions. Also, he did not prove that Mr. Hoyt knew of and was cooperating

---

21. *In re Leland,* 160 B.R. 834, 835–836 (Bankr.E.D.Cal.1993).

22. *Phillips v. Comm'r,* 272 F.3d 1172 (9th Cir.2001), *aff'g* 114 T.C. 115, 2000 WL 225899 (2000); *In re Olcsvary,* 240 B.R. 264 (Bankr.E.D.Tenn.1999), *aff'd on other ground,* 305 F.3d 474 (6th Cir.2002); *In re Miller,* 73 A.F.T.R.2d 94–376 (Bankr.E.D.Cal.1993), *aff'd* 174 B.R. 791 (9th Cir. BAP 1994), *aff'd* 81 F.3d 169 (9th Cir.1996); *In re Grover,* 73 A.F.T.R.2d 94–374, 1993 WL 632253 (Bankr. E.D.Cal.1993); *In re Rainey,* 73 A.F.T.R.2d 94–378, 1993 WL 632254 (Bankr.E.D.Cal. 1993); *In re Leland,* 160 B.R. 834 (Bankr. E.D.Cal.1993); *Mekulsia v. Comm'r,* T.C. Memo. 2003–138, 2003 WL 21107687.

23. 147 F.3d 221 (2nd Cir.1998).

24. 147 F.3d at 227.

with investigations against him at the time he granted the extensions.[25]

Mr. Martinez seems to be asking the court to say that the IRS should have removed Mr. Hoyt as tax matters partner. The court, without law to support it, is unwilling to impose a duty on the IRS to remove a tax matters partners when there are suspicions against him or her. In fact the Ninth Circuit has held in a case involving Mr. Hoyt that whether to remove a tax matters partners is at the *discretion* of the Commissioner.[26]

In sum, the court finds that the extensions granted by Mr. Hoyt were valid.[27] Accordingly, the court finds that Mr. Martinez's tax liabilities for the years of 1987, 1988, and 1989 are non-dischargeable.[28]

### B. Taxes for 1990 through 1993

■ The IRS must issue a Notices of Final Partnership Administrative Adjustments ("FPAA") before assessing a tax against a partner.[29] After the FPAA is issued, the IRS must wait 150 days, in which certain partners may institute a proceeding to contest the FPAA.[30] If the FPAA is contested, the IRS must wait until the decision of the court becomes final before assessing the taxes.[31] Also, the issuance of a FPAA suspends the three-year limitation on assessment, and if the FPAA is contested in court, the suspension remains in effect until the decision of the court becomes final and for one year thereafter.[32]

The United States does not allege that Mr. Hoyt executed extensions for the tax years 1990 through 1993. Instead, the United States contends that the IRS issued Notices of Final Partnership Administrative Adjustments ("FPAA's") within the three year period for making an assessment of taxes for the tax years of 1990 through 1993.[33] Tax Court petitions were filed after the FPAA's were issued, so the suspension of the time limitation remained in effect.[34] The proceedings are still pending before the Tax Court.[35] Therefore, the United States contends that because the period for making assessments had not run at the time the debtor filed his bankruptcy petition, the taxes for the years 1990 through 1993 were assessable, but not assessed. As such, the tax liability was non-dischargeable.

Mr. Martinez contends that Mr. Hoyt did not have the authority to institute the

---

25. Mr. Martinez does allege that Mr. Hoyt knew since 1983 that he was being investigated. This is *unsubstantiated* by the documents cited by Mr. Martinez.

26. *Phillips v. Comm'r,* 272 F.3d 1172, 1176 (9th Cir.2002).

27. Mr. Martinez suggests in his opposition to the United States' motion for summary judgment (P. 64) that whether Mr. Hoyt should have been removed as tax matters partner is a question of material fact that makes summary judgment inappropriate. The court, however, finds that it is a question of law that is appropriately decided on a motion for summary judgment.

28. It seems undisputed that if the extensions are valid, Mr. Martinez's tax liabilities for 1987, 1988, and 1989 are non-dischargeable.

Therefore the court will not go through the timeline of the extensions and assessability of the taxes through the petition date. This timeline is clearly shown in exhibits of the United States.

29. 26 U.S.C. § 6225

30. 26 U.S.C. § 6225

31. 26 U.S.C. § 6225

32. 26 U.S.C. § 6229(d)

33. Pleading 49, p. 8

34. Pleading 49, p. 9

35. Pleading 49, p. 9

Tax Court proceedings for the same reasons that he contends Mr. Hoyt did not have the authority to grant the extensions—because Mr. Hoyt should have been removed as tax matters partner and had a conflict of interest. For the same reasons as stated above, the court finds that Mr. Hoyt was the tax matters partner, and the IRS had no duty to remove him as such.

Mr. Martinez again cites *Transpac*[36] for the proposition that Mr. Hoyt had a serious conflict of interest that precluded him from acting on behalf of the partnerships. The court has already distinguished *Transpac* from Mr. Martinez's case. Mr. Martinez does not show that Mr. Hoyt knew of and was cooperating with an investigation at the time he instituted the Tax Court proceedings.

Mr. Martinez contends that there is an issue of material fact regarding Mr. Hoyt's conflict of interest that precludes summary judgment. The court disagrees. The facts of what both the government and Mr. Hoyt did do not seem to be in dispute. The dispute is over the law—whether Mr. Hoyt's actions should be deemed invalid. The court finds that Mr. Hoyt's actions were valid.

### III. *Conclusion*

The court finds that summary judgment is proper because there are no material facts in dispute. The court further finds that Mr. Martinez's federal tax liabilities for the years 1987 through 1993 were not discharged by his bankruptcy. An appropriate judgment will be entered.

---

**36.** 147 F.3d 221 (2nd Cir.1998).